FERGUSON et al. v. SMILL et al.

No. 16853.

Court of Appeal of Louisiana. Orleans.

Oct. 17, 1938.

Isaac S. Heller and Dudley Yoedicke, both of New Orleans, for appellants.

Montgomery & Montgomery, and Brainerd S. Montgomery, all of New Orleans, for appellees.

JANVIER, Judge.

Plaintiffs, William Loring Ferguson and Walter J. Ferguson, in June, 1936, by judgment of the Civil District Court for the Parish of Orleans, were sent into possession of the premises No. 1939 General Pershing Street, the upper apartment of which was at that time occupied by Eva Smill and Elizabeth Porter by virtue of a written lease granted by the deceased former owner. The lease was to expire on September 30th of that year, but the said tenants, on or about September 1st, having no further need for the apartment, vacated it, but did not notify the owners, nor their representative, nor did they surrender the keys. On or about September 24th, 1936, they surrendered the keys to plaintiffs' agent, who thereafter attempted to secure another tenant for the said apartment for the term commencing October 1st. A new tenant was obtained and it thereupon was discovered that certain plumbing fixtures had been entirely removed. In order to comply with the terms of the new lease, it was necessary to replace these fixtures and parts. Plaintiffs, having supplied them, seek to hold liable therefor their former tenants, the present defendants.

They allege that the cost of replacing the parts was $78.50 and they also seek judgment for an attorney's fee, which they allege is stipulated for in the lease under which the defendants occupied the apartment.

Several defenses are presented. By exception of vagueness it is contended that the petition did not, with sufficient clarity, set forth and describe the missing parts of the plumbing fixtures, and, by exception of no cause of action, the sufficiency of the allegations of plaintiffs' petition is challenged, it being said that it does not contain allegations of specific acts of negligence which resulted in the loss of the fixtures. Defendants also maintain that there is no evidence to show that the said articles were present and in good condition at the commencement of the lease, and they also assert that the record does not contain evidence showing any negligence on their part. They contend, also,

that even if the replacement of the missing parts is properly chargeable to them, plaintiffs expended more than was necessary and replaced parts, which were old and had been used for many years, with new ones at a much greater cost. Lastly, they maintain that the clause in the lease, on which plaintiffs rely as authority for their right to recover an attorney's fee, has no application where the amount sued for is less than $150.

From a judgment for plaintiffs for the full amount sued for, including an attorney's fee of $25, defendants have appealed.

### The Exception of Vagueness.

The petition clearly shows what parts were missing, the major items expended being $70 for replacing and installing one 2½-gallon automatic hot water heater, and the other items, totaling $8.50, being the cost of "repairing two defective toilets on second floor"; "repairing and renewing stolen parts on servant's toilet"; "* * * stolen handles on faucet on laundry tubs", and "installing new shower head upstairs".

### Exception of No Cause of Action.

This exception is founded on the theory that, since a tenant is ordinarily liable only for such loss or damage as results from his negligence, there must be a charge in such a petition as this that there was such negligence; that the facts on which such a charge is based must be alleged and that a general allegation of negligence will not suffice. Exceptors rely upon Art. 2721 of our Civil Code, which provides that "the lessee is only liable for the injuries and losses sustained through his own fault".

The lease itself required the lessees "to return said premises * * * in like good order as received by actual delivery of the keys to Lessor or Agent. The usual decay, wear and tear excepted". Art. 2719 of the Civil Code, even had there been no written lease, would have created just this obligation, for it, in part, provides that "it shall be the duty of the lessee to deliver back everything in the same state in which it was when taken possession of by him, making, however, the necessary allowance for wear and tear and for unavoidable accidents".

While, therefore, it is quite true that tenants are not liable except for loss resulting from their negligence, it is quite

obvious that the burden of absolving themselves should be placed upon them, particularly when it is not damage by wear and tear that is complained of but the entire absence of some part of the leased premises. In other words, if a tenant seeks to avoid responsibility for the value of some missing part of the leased building, he must show that it was not his negligence that caused the loss. All a lessor need do is to show the loss and at once there is thrown on the tenant the necessity to explain.

"The burden of proof is on him who has to support his case by a fact of which he is supposed to be most cognizant, and the evidence of which is more within his power than that of his opponent. Thus; the lessee of slaves, whose lease and delivery have been proved, must explain why he cannot return them. Delery v. Mornet, 11 Mart., O.S., 4; Nicholls v. Roland, 11 Mart., O.S., 190, 194; Meilleur v. His Creditors, 3 La. 532, 534; Offutt v. Scribner, 10 La.Ann. 639; Ford v. Simmons, 13 La.Ann. 397." 1 Hennen's Digest, 495, VIII, No. 2.

"When a lessor proves the lease and delivery, the lessee must exonerate himself from liability for the slave killed while in his possession. If he show facts creating a reasonable presumption that no fault is imputable to him, he is not liable; aliter if he fail to prove such facts, the evidence of which, because most within his power, it is but just he should produce. Ford v. Simmons, 13 La.Ann. 397." 1 Hennen's Digest, 802 (2) No. 9.

"C. C., 2721 (2691): 'The lessee is only liable for the injuries and losses sustained through his own fault.'

"The burden of proof is upon the lessee of movables to exonerate himself from liability for their damage or loss because the evidence of that fact is more within his power. 1 H.D. 495, VIII, No. 2. After he has negatived the presumption of negligence on his part, created by the damage or loss of the thing while in his possession, the burden of proof is shifted to the lessor to establish that the damage or loss was caused by the fault of the lessee. 1 H.D. 802 (2) Nos. 1 to 9."

Fisher v. Hernandez, 11 Orleans App. 348, 350.

"The Civil Codes of France and Italy, as well as that of Spain, hold the lessee responsible for injury to, and destruction of the property rented, except where he can prove that it resulted from unavoidable accident, faulty construction, or irresistible force. (Cod.Civ. de Fr. III-VIII-2. Art. 1733.) (Cod.Civ. d'It. III-IX-2. Art. 1539.) (Cod.Civ. de Esp. IV-VI-2, Art. 1563.) * * *

"'* * * The provisions of the Civil Code of Louisiana are, with reference to the laws governing leases, almost identical with those of the nations quoted above. (Civ.Code of La. II-IX.)—Ed."

Las Siete Partidas (Translation and Notes by Samuel Parsons Scott) p. 1065, Note 1.

"The lessor is obligated to return the premises in the condition in which it was received, with allowance for wear and tear, and is bound to replace glass in windows accidentally broken, and is only relieved of the obligation when the breakage is in whole or greatest part due to inevitable accident (Civil Code, Arts. 2716, et seq.) and the mere fact that the lessee, when delivering the premises, is unable to account for the broken lights, is not equivalent to proof that the breakage was in whole or in part due to inevitable accident, such as a hail storm or wind of unusual violence." Thorsell et al. v. General Tire & Rubber Co., 8 La.App. 771.

■ The lessors here have alleged the loss and the burden has been shifted to the tenants to explain that the loss did not result from their negligence. Those allegations are sufficient, therefore, and the exception of no cause of action was properly overruled.

■ Defendants' contention that there is no proof that the articles were present at the commencement of their occupancy is not supported by the evidence. On the contrary, the record satisfies us on this point and particularly is it shown that, when defendants consented to accept the apartment, they required that certain repairs be made. Among their demands was one to the effect that all plumbing fixtures must be put in good condition. There was no further complaint concerning the plumbing fixtures. Defendants, therefore, cannot now be heard to say that these parts, which were absolutely essential, were not present when they accepted the apartment.

■ The principal defense is based on the legal proposition that defendants are not liable because they did everything rea-

sonably within their power to prevent the loss· and nevertheless the articles were stolen by some third person or persons. Of course, lessees, as we have shown, are not liable for losses not chargeable to their negligence. But there are certain circumstances shown here which we cannot overlook. In the first place, defendants admit that, when they vacated the premises and the plaintiffs discovered that the apartment had been left vacant, they—the defendants—were warned on several occasions that there had been many robberies in the neighborhood and that there was danger that the particular apartment in question might be burglarized, and yet they refused to surrender the keys to the lessors and took no further precautions to protect the premises. That they were amply warned is shown by the testimony of Miss Smill. Bearing in mind that the Mr. Villere referred to was the real estate agent of the plaintiffs and that the Mr. Ferguson referred to is one of the plaintiffs, let us see what Miss Smill has to say on this subject:

"A. * * * Mr. Villere phoned me at least once to tell me that I was responsible for the premises, and Mr. Ferguson phoned to caution me. We had asked them before that, since we were to pay the rent on the house and since we knew there was considerable painting and repairs to be done, for them to reduce a portion of the rent which we would pay, but they said they couldn't do that, and after that I was called at least twice telling me I was responsible for the premises."

The burden was on defendants to absolve themselves of responsibility by showing their own freedom from negligence and they have made no serious attempt to do this. They merely seek to show that they left the premises for nearly a month unprotected and refused to surrender them to plaintiffs.

▆ Defendants maintain that they are not liable for the whole cost of the new parts for the reason that plaintiffs, when they found that the water heater which forms the basis of the principal part of the damage claimed, had been stripped of its most important parts, did not replace those parts, but, instead, installed a new heater at a much greater cost. The evidence shows that, when plaintiffs first discovered that the coil of the heater and other parts were not present, they searched among the plumbing fixture supply houses in New Orleans for the parts with which to put this heater back into condition and were unable to find them. The evidence shows that they called upon five different supply houses and reached the conclusion that the parts could not be procured except by sending away for them and that this would require nearly two weeks. In the meantime, the new tenants had moved into the premises and it is shown that they demanded that the repairs be made immediately, otherwise they would vacate. It was in this emergency that plaintiffs found it absolutely necessary to purchase a new heater, and they did this in order to avoid a more substantial loss. The heater which was made defective by the loss of the coil and. other parts, it is true, was an old one. Nevertheless, it was entirely satisfactory for the needs of plaintiffs' apartment and they would not have been required to buy a new one except for the loss of the parts of the old.

It does not appear to us, therefore, that defendants can be heard to contend that plaintiffs should have waited longer in an effort to obtain the parts for the old heater and should have jeopardized the new lease.

▆ The contention that defendants are liable for attorney's fees in any event is based on a rather peculiar provision in the lease, reading as follows:

"Should an Agent or Attorney be employed to give special attention to the enforcement or protection of any claim of Lessor arising from this lease, Lessee shall pay, as fees and compensation to such Agent or Attorney an additional sum of ten per cent. of the amount of such claim if $150.00 or over, the minimum fee, however, to be $25.00, or if the claim be not for money, then such sum as will constitute a reasonable fee, together with all costs, charges and expenses."

Defendants maintain that a proper interpretation of this provision requires that it be held that no attorney's fee is stipulated for unless the claim amounts to $150 or more. Plaintiffs argue that the insertion of the figures "$150.00" evidenced a clerical error and that what was intended was that the fee should be fixed at 10 per cent. on any amount as great as $250 or over and, at a minimum of $25.00 on any amount less than $250. It is possible that that was what was intended. But the lease was prepared by the plaintiffs and, if it

is ambiguous, its provisions should be interpreted against them. It is perfectly reasonable to interpret it as providing for a fee only in the event the claim amounts to $150 or more and to so interpret it not only does no violence to its language, but seems to be entirely consonant therewith. We can see nothing unreasonable in parties stipulating that, if a small amount is in dispute, no fee will be involved, and therefore stipulating that, unless the amount is as great as $150, no fee will be charged. At any rate the contract, as it is now written, so provides. The fee, therefore, must be eliminated.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended by the reduction of the amount thereof to $78.50 and, as thus amended, it is affirmed, costs of appeal to be paid by plaintiffs.

Amended and affirmed.

WESTERFIELD, J., absent, takes no part.