TUCKER, Judge.
This is a suit by Coast Tool and Supply Company to recover damages in the amount of Nine Thousand, Nine Hundred and Twenty-four ($9,924.00) Dollars, as represented by the value of a piece of oil field equipment known as a “Bowen power swivel”, which was leased to Rebel Well Service, Inc., and allegedly destroyed in an accident on July 28, 1968, while being transported by defendant from Grand Isle to Houma, Louisiana. Aetna Casualty and Surety Company, the fleet insurer of Rebel *410 Well Service, Inc., was originally joined as a party defendant, but by motion of plaintiff, dated October 14, 1969, it was dismissed from this suit as a party defendant.
Plaintiff initially alleged a depositor-depositary relationship between the parties as a result of the lease of the 30-ton Bowen Power Swivel complete with a hydraulic hose panel board and skid mounted diesel unit. Although defendants denied such a relationship in their answer, all parties stipulated at the commencement of trial that the relationship between plaintiff and Rebel Well Service, Inc. is that of lessor-lessee. The stipulation further recites that after the unit was used by Rebel Well, it was being returned by Rebel from Grand Isle, Louisiana, back to Rebel’s establishment in Houma, Louisiana, when the damage producing accident occurred. We note, however, the stipulation fails to disclose the details of the lease or even whether the lease was written or oral. In view of the stipulation, we must decide this controversy on the basis that the relationship between the parties is that of lessor-lessee.
The evidence reflects that in the early morning hours of July 28, 1968, Wilbert Trahan, who was the driver of the truck belonging to Rebel Well Service transporting the Bowen swivel in question, and an employee of Rebel Wells, acting in the course and scope of his employment, while enroute from Grand Isle to Houma, had just passed the town of Larose and was proceeding toward Bourg, Louisiana, when he drove off the highway, allegedly to avoid an on-coming automobile, and in the process of getting back on the highway overturned his truck, causing the Bowen swivel to fall off the truck and suffer the damage for which this suit was brought.
The judge of the lower court found that it was immaterial whether the relationship between the parties was that of depositor-depositary or lessor-lessee, because the measure of responsibility devolving upon defendant under either LSA-R.C.C. Article 2937 or Articles 2719-2721 is essentially the same. “In either case”, the judge of the lower court said, "We are required to determine whether the destruction of the swivel in this case was or was not due to the negligence of the defendant’s employee, Wilbert Trahan”. Accordingly the lower court found that the damage incurred in this suit was a result of the negligence of defendant’s employee, Wilbert Trahan, and gave judgment to plaintiff against Rebel Well Service, Inc., in the amount of Nine Thousand, Four Hundred and Twenty-four ($9,424.00) Dollars, with legal interest thereon from the date of judicial demand until paid and. all costs of these proceedings, which principal sum represented the replacement value of the Bowen swivel, less eleven months’ depreciation, the value arrived at by Crawford & Company, which concern adjusted the claim. From this judgment the defendant, Rebel Well Service, Inc., appealed.
The sole issue presented on appeal is whether or not the lower court erred in finding that the defendant had failed to carry its burden of proof required to overcome the presumption of negligence against it; i. e., whether or not defendant failed to prove that its employee Wilbert Trahan was free of negligence in the causing of the accident which resulted in the demolition of the Bowen swivel.
The obligation of a lessee to return the leased object to lessor at the termination of the lease is contained in LSA-C.C. Arts. 2719-2723, inclusive. These articles of the Civil Code deal specifically with the duties imposed upon the lessee of property for its maintenance and preservation during the course of the lease. Along with the general tenor of the cited articles we are especially concerned here with the purport of Article 2721 which we quote as follows:
“The lessee is only liable for the injuries and losses sustained through his own fault.”
While Article 2721, above, states that the lessee is liable only for injuries *411 and losses occasioned by his own negligence or fault, the jurisprudence has evolved the rule that where the loss or damage to the leased property does not result from wear or tear, but consists of the complete absence of a portion of the leased property, the circumstances justify the inference of negligence on lessee’s part. Consequently, the lessee is charged with the burden of showing his freedom from fault in such instances. Ferguson v. Smill, 183 So. 600 (Orleans Appeal). The Ferguson case involved a lessor’s claim for plumbing fixtures removed from the leased premises by lessee. The rationale of the decision is that under such circumstances, lessee’s superior knowledge of the facts justifies imposition upon lessee of the burden of exculpating himself from fault. In so concluding, the court cited numerous authorities in which the same rule had been applied to the lessees of slaves who failed to return the slaves at the termination of the leases. We note that Ferguson, above, also cited and relied upon Fisher v. Hernandez, 11 Orleans Appeal 348, which also invoked the principle that negligence on the part of lessee is inferred from the fact that leased goods suffered damage or loss while in lessee’s possession.
We believe that the rule announced in Ferguson, above, is applicable by analogy to the case at hand wherein leased equipment was totally destroyed by accidental means while in lessee’s possession. Obviously, the present lessee possessed superior knowledge as to the circumstances of the accident producing damage. Under the circumstances, the inference of negligence applies. The trial court correctly held that defendant-lessee bore the burden of exonerating itself from the inference of negligence.
There was only one eye-witness to the accident in this case, and that was Wilbert Trahan, the driver of the International trailer-truck transporting the Bowen swivel. His testimony is conflicting. On cross-examination Trahan testified that, when coming out of a curve in the road six miles from Larose, he was blinded by the bright lights of an oncoming automobile, but he was unable to describe such vehicle or estimate the distance of this vehicle from his truck. To avoid a head-on collision, he pulled off the highway on his right — only one tire on the shoulder- — then brought the truck back onto the highway, but apparently lost control and turned the truck over to the right into the ditch. He testified that he was driving about 45 miles per hour, while rounding the curve.
A police officer, State Trooper, Officer C. E. Hood, testifying later, who at no time talked to Trahan, stated that the first skid marks he found were 444 feet in length in the left lane of the highway. He testified that the vehicle went off the highway, heading west across the eastbound lane of traffic, before coming back on the highway. At the point of return onto the highway there is a two or three inch gap between the shoulder of the road and the pavement. After reentering the highway the officer testified that the vehicle turned over in the highway leaving a three inch gouge mark in the road. “From where it entered the road to where it turned over was 102 feet, and then to where it finally ended, it turned completely over and ended up with the vehicle facing east and approximately eighty-seven feet from where the vehicle rolled over. ... It wound up on the right shoulder of the road.” At no time did Officer Hood mention that Trahan first went off the highway to his right.
Testifying on direct examination following Officer Hood, Trahan gave a slightly different version of the accident, stating that he first went off the road to the right, but brought his truck back onto the road, and it dumped over. He testified, also, that he believed that he got off the road to his left, but got back onto the highway, and that then the truck flipped over. The truck ended up right side up and facing toward Larose, in the opposite direction from which it had been traveling, on its right hand side of the road.
*412 The man who found Trahan soon after the accident, Frank Mitchell, testified that he had been blinded by a vehicle with bright lights and was run off the right side of the road about a quarter of a mile before finding defendant’s overturned truck. The time element was not admitted into evidence. Mitchell was unable to describe the vehicle which blinded him, and there is absolutely no evidence in the record upon which this court can determine that the vehicles which allegedly blinded both men and forced them off the road were one and the same, or even if there were such vehicles. It is quite possible, according to the lower court judge, that the bright lights which Mitchell saw, causing him to swerve off the road, were those of Trahan as he veered into his left lane.
If there were a vehicle with blinding lights which confronted Trahan, as he alleged, and which has not been established, and if it were the same vehicle which confronted Mitchell, which is not established either, this coincidence would offer little comfort to defendant’s position. Mitchell was driving an automobile and not a truck. His vehicle was forced off the highway at a slightly different spot from that at which Trahan went off the road; nevertheless, confronted with a similar “sudden emergency”, Mitchell managed to brake and maintain control of his vehicle. This suggests that there were other factors involved in the Rebel Wells accident besides just the “sudden emergency” presented by the unidentified vehicle with the bright lights.
Based on the foregoing circumstances, the trial court, in effect, found that defendant-lessee not only failed to refute the inference of negligence applicable under the circumstances, but also that the record affirmatively showed that the accident resulted from the negligence of lessee’s employee in either entering the curve at too rapid a rate, or falling asleep while driving, or both. We find no error whatsoever in either of these findings by the trial court. It is established jurisprudence that the findings of the trier of fact will not be set aside unless it is found upon appeal to be manifestly erroneous. Barnes v. Le Blanc, 207 La. 989, 22 So.2d 404.
For the foregoing reasons, and finding no manifest error in the trial court’s determination of the facts, the appealed judgment will be affirmed at appellants’ costs.
Affirmed.