436 So.2d 1289 (1983)
AMERICAN MACHINERY MOVERS, INC.
v.
CONTINENTAL CONTAINER SERVICE, INC.
No. 13344.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1983.
Rehearing Denied September 22, 1983.
*1290 Francipane, Regan & St. Pe้, Philippi P. St. Pe้, Metairie, for plaintiff-appellant.
G. Edward Merritt, Terriberry, Carroll, Yancey & Farrell, New Orleans, for defendant-appellee.
Before SCHOTT, AUGUSTINE and LOBRANO, JJ.
AUGUSTINE, Judge.
Pursuant to the terms of a written lease, American Machinery Movers, Inc. delivered a diesel forklift to the premises of Continental Container Services, Inc. on June 24, 1981. Although the machine was approximately ten years old, it was apparently in good condition as of the time Continental received it. About one month later, however, the forklift's engine unexpectedly failed while in use at the lessee's yard. At that time, Kenneth Hemer, a Continental shop foreman, was operating the machine when the diesel engine suddenly developed a severe "knock." Fearing that something might be seriously wrong, Hemer immediately turned the motor off and conducted a brief inspection. His first concern was to determine how much oil was in the engine, and upon drawing the dipstick, Hemer observed that there was less than the required minimum. American was notified of the diesel's failure and dispatched a mechanic, Gerald Thomas, to the Continental yard to determine the cause of the breakdown. On arriving there, Thomas discovered that a piston had penetrated the side of engine block, leaving a rather large hole in the motor. Upon further inspection, Thomas also noted that there was insufficient oil on the dipstick.[1] When he later reported this fact to his superiors, Thomas explained to them that in his opinion, the damage to the engine was caused by operating the diesel without the required amount of oil. Invoking that provision of the lease which obligated Continental to maintain the proper level of oil in the diesel at all times,[2] American made demand upon its lessee for the full cost of repairs ($7,579.47).[3] Continental denied fault in connection with the damage to the forklift, and refused to reimburse American. This suit for damages followed.
American's claim against Continental is based upon these legal principles:
First, when the lessee receives a leased thing in good order, he must return it in the same state. La.Civil Code Arts. 2719, 2720.
Second, when damage occurs to the leased object while in the possession of the lessee, it is presumed that the damage has resulted from the lessee's negligence, and it is therefore his burden to exonerate himself from liability by proving his freedom from fault. Perroncel v. Judge Roy Bean's Saloon, 405 So.2d 626 (La.App. 3rd Cir.1981); Ferguson v. Smill, 183 So. 600 (Ct.App. Orleans 1938). As applied to lease of movables, see Hislop Plumbing Company, Inc. v. Pogue-Atkins, Inc., 283 So.2d 808 (La.App. 2d Cir.1973); Fisher v. Hernandez, 11 Orleans App. 348 (1914). The reason for the presumption is that, having been in possession of the leased object, the lessee is more able than the lessor to explain the cause of damage or loss. Ferguson, supra; Fisher, supra.
Continental sought to defend this action by asserting that the machine failed simply because of its age, and not because it was *1291 operated at a low oil level, as plaintiff contends.
The trial judge held for the defendant, finding that "testimony from employees of Continental Container indicated that they periodically checked the oil and water pressure and that it appeared adequate". Reasons for Judgment, page 3. The trial court also "placed great emphasis on the fact that the forklift itself was already ten years old and had a life expectancy of three to five years." Reasons for Judgment, page 3. The opinion concluded: "The court did not find that plaintiff's (sic) proved their case and accordingly ruled for the defendants". Reasons for Judgment, page 3.
It is evident from the above that the trial court committed legal error in allocating the burden of proof to the plaintiff-lessor rather than to the defendant-lessee. In Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707, 708 (La.1980), it was held that "... where a finding of fact is interdicted because of some legal error implicit in the fact finding process and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record." Inasmuch as misallocation of the burden of proof interdicts the fact-finding process, we cannot attribute to the trial court's ultimate findings the great deference to which they would be ordinarily entitled. Accordingly, our de novo review of the record is in order.
The immediate issue is whether the lessee, Continental, discharged its burden to prove that the damage to the diesel forklift was not caused by its negligence.
As previously stated, Continental defended this action on the ground that the forklift was ten years old and failed simply because of its age. To prove this fact, the defendant offered the testimony of Mr. William Little, Continental's president, who testified that the average life expectancy of a machine such as American's is, at most, five years. In support of this testimony, Continental introduced into evidence a letter (received by Little during the ordinary course of business) wherein it was stated that the average work life of American's diesel is approximately 10,000 hours.
Acknowledging, for present purposes, the truth of Little's testimony and the accuracy of the aforementioned letter, we do not consider the foregoing evidence to be sufficient to carry the defendant lessee's burden of proof. First, Mr. Little's testimony concerning the work-life of a machine such as American's was based upon the performance of similar forklifts in Continental's yard, where forklifts are in constant, heavy toil over the course of a forty-hour week. But according to Mr. Dennis Scandurro, American's vice-president, the forklift in question was never subjected to such a rigorous work schedule. During the first seven years of the diesel's "life", it was not rented to anyone, but remained in the service of American Machinery Movers, where it was used primarily to unload other machines at various industrial locations around the city. Scandurro testified that such operations did not ordinarily require the forklift to be in operation for long periods of time, and consequently, the machine had relatively few hours on it as of the time it failed. Scandurro also stated that when American finally began renting the machine, it was generally leased on a "per lift" basis rather than by the month, and for that reason, was used for only a few hours per day. Little's opinion concerning the average life expectancy of a diesel forklift of the type under consideration therefore provides no reliable yardstick by which to measure the actual condition of American's machine, which was relatively unabused in comparison with those in Continental's yard.
Moreover, even assuming that Little's testimony allows the inference that American's forklift had a life expectancy of only a few more years than those in Continental's yard, and therefore, that American's diesel had lived beyond its expected worklife, that fact merely warrants a finding that old age fatigue was among the many possible causes of breakdown. But having undertaken the burden to prove a specific cause of failure, it is not enough for defendant to prove the mere possibility of that cause. His burden, to be discharged, requires proof by a preponderance of the *1292 evidence. Such proof has not been given here, for considering that the fact sought to be provedโthe cause of a diesel engine's failureโis a rather technical one, we do not think it should suffice for "proof" to say merely that the machine was ten years old and had a life expectancy of five years. Such evidence, utterly lacking in specificity, completely fails to educate us as to how or why the diesel might have been damaged. Accordingly, we hold that the defendant has failed to dispel the presumption that the damage to American's forklift was caused by Continental's negligence.
With respect to the plaintiff's specific allegation that Continental was negligent in not maintaining a proper level of oil in the diesel, and that this negligence caused the engine to fail, the defendant responds that it had maintained the forklift properly throughout the duration of the lease. The only witness who testified concerning this fact, however, was Kenneth Hemer, Continental's shop foreman, whose entire testimony on this point was hearsay:[4]
Mr. Hemer:
"I went to each individual driver and asked him when he checked the oil last.?
Mr. St. Pee:
"What did they say?"
Mr. Hemer:
"Mr. Jarreau did not have anything specific on that, and Mr. Mattix said that he hadn't checked it. Mr. Glenn said that a few days before (the breakdown) Delaney checked it".[5]
This testimony cannot establish that the forklift was properly maintained, for even if Hemer's statements are accepted as true, the only person to check the oil within the week prior to the breakdown was Delaney. According to Hemer, that inspection probably took place on a Monday, because "normally, on Mondays, everything is checked". But Hemer also said that, according to Mr. Glenn, there was an interval of "a few days" between Delaney's inspection and the July 27 breakdown. However, since July 27, 1981 was a Monday, Delaney could not have inspected the machine on that day. Therefore, if Delaney inspected the machine at all, it was probably on the previous Monday, a full week before the breakdown. Continental's policy with regard to its own machines, however, required inspection of oil and water levels every two days. But in testimony and in briefs to this Court, Continental admits that this policy was not followed with respect to the leased forklift. We therefore conclude that Hemer's testimony cannot carry the burden of relieving the defendant of its presumed negligence.
American, on the other hand, has affirmatively established that which it was under no burden to prove: first, that Continental did not maintain the machine with the frequency required by its own policy, and second, that at the time the engine failed, the oil was well below the required level. Finally, American's mechanic testified that the engine failed because of low oil, and although his testimony concerning the causal link between low oil and the subsequent engine failure was not as thorough as it might have been, his ultimate conclusion was not only reasonable, but also unrefuted.
Accordingly, the judgment of the district court is reversed, and there is judgment herein in favor of American Machinery Movers, Inc. and against Continental Services, Inc. in the full sum of $7,579.47, plus legal interest from judicial demand and all costs.
REVERSED.
NOTES
[1] At trial, there was conflicting testimony concerning the amount of oil showing on the dipstick. Hemer stated (on behalf of Continental) that there was about 1/8"; Thomas said there was none at all. There was further conflict as to the distance between the very bottom of the stick and the "minimum level" or "add oil" line. Hemer testified that the distance was ผ". Thomas stated, however, that the "add oil" line was พ" from the bottom. In either case, the oil was beneath the minimum level by at least 1/8" on the dipstick. The "topping off" level was 7/8" from the bottom.
[2] This provision of the lease was underscored in the original.
[3] Plaintiff sued for $7,959.47 which includes bills of $380 incurred on July 21, 22 and 23 for repairs to the machine for problems unrelated to the breakdown on July 27.
[4] Plaintiff did not object to Hemer's testimony, however, and we therefore apply the traditional rule that such testimony may be given the probative value to which it is found by reason to be entitled. See Pugh, Work of the Appellate Courts, 1975-76 term, Evidence, 37 La.L. Rev. 611 (1877), citing Coleman v. Victor, 326 So.2d 344 (La.1976); and McCormick on Evidence, ง 54, 2d Ed., (1972).
[5] Inasmuch as Hemer's information concerning Mr. Delaney's maintenance of the oil level is second-hand, coming through Mr. Glenn, it is hearsay at best and would be double hearsay in the event that Mr. Glenn did not actually see Delaney check the oil, but merely reported to Hemer what Delaney had said.