626 So.2d 1200 (1993)
Vernon GOINS, et al., Plaintiffs-Appellees,
v.
GALION MANUFACTURING COMPANY, A DIVISION OF DRESSER INDUSTRIES, INC., et al., Defendants-Appellants.
No. 92-1124.
Court of Appeal of Louisiana, Third Circuit.
October 20, 1993.
Writ Denied January 28, 1994.
*1202 Hunter William Lundy, Milo Addison Nickel Jr., Lake Charles, for Vernon Goins.
Robert E. Landry, John Michael Veron, Lake Charles, for Galion, Mfg.
John E. Cox, Rebecca Kittok Wisbar, Baton Rouge, James Clarence Lopez, Opelousas, for Prairie Const. Co.
Mark Louis Riley, Lafayette, for AETNA Cas. & Sur.
Joseph Bradley Ortego, Eunice, John Claiborne Young, Baton Rouge, for State of Louisiana, DOTD.
Cyd Sheree Page, Lafayette, for American Cas. Ins. Co.
Before DOUCET, KNOLL and COOKS, JJ.

FACTS
COOKS, Judge.
Vernon Goins was injured while working on a highway construction project. Goins suffered severe injuries when a pneumatic roller weighing 22,000 pounds rolled over him. Goins sued the general contractor (Prairie Construction Company) and its insurer (American Casualty Company), the manufacturer of the pneumatic roller (Galion Manufacturing subsequently acquired by Dresser Industries) and its insurer (Insurance Company of North America), and the State of Louisiana (Department of Transportation and Development). Prairie Construction Company secured a contract with the State of Louisiana to perform work on a highway project. The contract included asphalt paving construction. The asphalt work was subcontracted to James Corporation, Goins' employer at the time of the accident and the owner of the pneumatic tire roller. After a jury trial, liability was assessed as follows:

Prairie Construction Company 75%
James Corporation of Opelousas 14%
Dresser Industries (Galion Manufacturing) 10%
Vernon Goins 1%
Department of Transportation and 0%
Development, State of Louisiana

Vernon Goins was awarded damages in the amount of $650,000.00. Pamela Goins, wife of Vernon, was awarded damages in the amount of $100,000.00. Prairie Construction Company, Dresser Industries (Galion Manufacturing), and their respective insurers filed this appeal. Appellees answered the appeal seeking affirmance of the lower court's judgment and an increase in the award of damages to Vernon Goins. The intervenor, Aetna Casualty and Surety Company (the Worker's Compensation carrier for James Corporation) also answered the appeal adopting Vernon Goins' arguments in brief in favor of the judgment's affirmance; and additionally requesting that this court recognize the award related to the payments of compensation benefits as "continuing" after trial.
Following oral argument, Prairie Construction Company, its insurer (American Casualty Insurance Company) and appellees resolved the pending claims and contentions existing between them to their mutual satisfaction. They filed a Motion for Dismissal with this court which was granted on September 8, 1993.
Accordingly, we turn our focus to the remaining issues on appeal raised by Dresser Industries (Galion Manufacturing), its insurer (Insurance Company of North America), and the intervenor (Aetna Casualty and Surety Company). In addition to attacking certain evidentiary rulings by the trial judge, Dresser Industries and its insurer essentially urge "as a matter of law," the manufacturer did not breach a legal duty owed to Vernon Goins and the accident was not caused by any acts or omissions of the manufacturer. Because we agree the manufacturer did not breach a legal duty owed to Vernon Goins which contributed to his unfortunate accident, the judgment is reversed in part to rescind the finding of liability and award against Dresser Industries and its insurer. In all other respects, the judgment is affirmed with an amendment to provide the award made to Aetna Casualty and Surety Company shall include payment of benefits paid from rendition of judgment to its finality.

PERTINENT FACTS
The pneumatic tire roller was purchased by Prairie Construction Company in 1970. *1203 In its original state, the roller was equipped with an optional nylon or plastic scraping device which automatically removed built-up asphalt on the machine's tires. This device subsequently was removed from the machine and James Corporation (the later owner) replaced it with a two inch by six inch wooden board fastened by two steel brackets attached to the wheels of the machine. See Appendix A. As originally designed, the machine was not equipped to accommodate passengers, other than the driver. See Appendix B. To facilitate the scraping maneuver after placement of the board, workers on occasion were required to apply pressure to the board sufficient to cause it to bend and touch the tires' surface scraping away unwanted asphalt. Goins mounted the roller on the date of the accident by stepping on a foot pedal and holding a handbar located on the rear of the machine, ultimately positioning one foot on the roller's chassis and the other on the board. As he attempted to apply pressure to the board by distributing his weight, it broke. Goins lost his balance falling on the ground near the roller's tires, which were moving backwards. Goins sustained severe crushing injuries when the machine eventually rolled over him.
Appellees presented two theories before the lower court which they now argue supported the jury's liability finding against the manufacturer. First, they suggest the facts demonstrate the machine was designed to entice "operators and/or passengers" to place themselves in a position of peril because located on its rear was a handbar and a foot step. The presence of these items, contend appellees, encouraged workers such as Goins to stand on the rear chassis. As a consequence, they urge the jury could have reasonably concluded the machine's design was defective because there was no "guard rail" or other protective device to restrain such a worker from foreseeably falling and being run over by the machine's tires. This eventuality was foreseeable because, as circuitously argued by appellees, the manufacturer should have anticipated, in actual use, workers might mount the machine on the rear; and, stand on a scraper, modified or replaced in later years by the owner, i.e. James Construction Company, to facilitate the removal of built-up asphalt accumulating on the rear tires. Second, they asserted the manufacturer failed to provide any warning or other information advising that the handbar and foot step were designed to aid only the driver in mounting the machine and that the machine was not designed for other passengers such as Goins.

LEGAL PRECEPTS
At the time of this accident, to prevail in a products liability case, appellees were required to prove that (1) the product's alleged defective condition existed at the time it left the control of the manufacturer or supplier; (2) the condition made the product unreasonably dangerous in normal use; and (3) the injury or damage resulted from the condition of the product. They were not required to prove negligence by the maker in its manufacture or processing because the manufacturer then was liable even though it exercised all possible care in the preparation and sale of its product. Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985); Hebert v. Brazzel, 403 So.2d 1242 (La.1981); Hunt v. City Stores, 387 So.2d 585 (La.1980); Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La.1978); Weber v. Fidelity Casualty Insurance Co. of New York, 259 La. 599, 250 So.2d 754 (1971).
Furthermore, even if the products were not defective in construction or design, the manufacturer still had a duty, nevertheless, to adequately warn about dangers related to the way the product was designed. Stated differently, the manufacturer had a duty to warn of any danger inherent in the normal use of its product. Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986); Winterrowd v. The Travelers Indemnity Co., 462 So.2d 639 (La.1985); Hebert v. Brazzel, supra; Chappuis v. Sears Roebuck & Co., supra. The manufacturer was under no duty, however, to warn of those dangers which are matters of common knowledge or obvious to an ordinary user. Bloxom v. Bloxom, 512 So.2d 839 (La.1987). Lovell v. Earl Grissmer Co., Inc., 422 So.2d 1344 (La.App. 1st Cir.1982), writ denied, 427 So.2d 871 (La.1983); Tri-State Insurance Co., v. Fidelity & Casualty Insurance Co., *1204 364 So.2d 657 (La.App. 2d Cir.), writ denied, 365 So.2d 248 (La.1978); Albert v. J & L Engineering, 214 So.2d 212 (La.App. 4th Cir. 1968). To be relieved of the duty to warn, a manufacturer need not prove actual knowledge of the danger. The manufacturer must show only that the user should have known of the danger. Chappuis, supra; American Insurance Co. v. Duo Fast Dixie, Inc., 367 So.2d 415 (La.App. 4th Cir.1979); Foster v. Marshall, 341 So.2d 1354 (La.App.2d Cir. 1977), cert. denied, 343 So.2d 1067 (La.1977). The manufacturer's additional duty to "anticipate alteration and modification of the product resulting from wear and tear" is qualified by reasonableness and foreseeability. A manufacturer's duty to anticipate users might replace certain worn out parts on its product does not include the risks occasioned by the use of improper or substandard replacement parts. Frey v. Travelers Insurance Company, 271 So.2d 56 (La.App. 4th Cir.1972), writ denied, 273 So.2d 840 (La. 1973). Finally, we recognize, as well settled, that an appellate court may not set aside a jury's factual finding unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La. 1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), writ denied, 374 So.2d 660 (La.1979); Canter v. Koehring, 283 So.2d 716 (La.1973).

ANALYSIS
Carefully reviewing the record in its entirety, we must conclude the jury's assessment of fault against the manufacturer based on the facts established in this case was "clearly wrong." Appellants presented the testimony of an expert and lay witnesses to show that several rollers constructed prior to and after the Galion roller had frames, fenders, or chassis that extended over the wheels and required mounting and dismounting of the machine from the side, as opposed to the rear. While admitting in brief that the breaking of the board was "a cause in fact" of the accident, appellees argue this event was not the sole cause. They contend the roller was structurally defective because it did not possess a guard or other covering over the wheels and because the "mounting" devices were located to the rear of the machine. As suggested by appellees, the presence of these devices enticed users to place themselves in positions of peril. As stated previously, to prevail the user first must establish that the defective condition existed at the time it left the manufacturer.
At the time the machine left the manufacturer it was equipped with an optional nylon or plastic asphalt scrapper which was removed in later years by the subsequent owner and replaced with a wooden board. As confirmed by the manufacturer's expert and undisputed in the record, the mounting device located at the rear of the roller was designed to assist the driver in mounting the unit. The machine was not designed to carry other passengers. Countering this testimony, appellees simply argue the position of the mounting device "attracted" or "enticed" user to mount the rear of the machine. The record simply does not present any evidence that the presence of a fender, extended chassis, or other wheel protectors would have prevented Goins from first falling off the machine and being later run over as the machine proceeded in the reverse. The causal link between the claimed "defect" and the occurrence of the accident was not established by the evidence. Appellants had the initial burden to prove this "causal link" by preponderance of the evidence. To the contrary, the record convinces us that the jury could not reasonably conclude the alleged protective devices would have prevented the accident. Goins fell on the ground after placing his weight on the wooden board which broke causing him to lose his balance. The presence of a fender or like protective device extending over the rear tires would not have prevented them from continuing backward and eventually rolling over Goins.
Moreover, while a manufacturer must anticipate potential misuse of the product, as well, it is not liable for injuries caused as a result of an improper alteration of the product. Any duty the manufacturer may have had to place a fender or guard on the roller legally did not include the risk that in later years an owner might alter the machine; replace the automatic nylon or plastic scraper with a "wooden board;" insist that workers mount the machine; and, place their body weight on the board to manually scrape built-up asphalt off the tires.
*1205 Turning to the duty to warn, a manufacturer is not required to inform a user of obvious or "common sense" dangers presented in the normal use of its product. To avoid application of this legal requirement, appellees presented evidence showing that other machines had mounting devices to the side of the machine, as opposed to the rear, thus making it less "enticing" to board the rear of the machine. As a result, they urged the manufacturer should have provided information warning that the machine either was not intended for use by other passengers or that a user should not mount and stand on the rear of the machine. Goins did not fall while mounting the machine or from riding on its rear. Instead, he fell because a wooden board broke. The wooden board was not attached to the machine when it left the manufacturer. Considering the undisputed account of the accident's occurrence and the legal duty placed on a manufacturer to warn, we find the danger presented in this case was obvious and substantially likely to result from applying constant pressure to the "wooden board." As depicted in Appendix A, any user reasonably observing the machine's features should have considered the substantial likelihood of sustaining serious injury while attempting to scrape asphalt from the machine's tires by physically positioning his body to apply pressure to a wooden board. These consequences were readily cognizable and apparent to users possessing average intelligence.
Furthermore, the manufacturer's duty to warn extends only to those "foreseeable" dangers posed by the normal use of its product. The manufacturer cannot be held to envision that a pneumatic roller owner would remove the automatic scraping device mechanically, designed to remove asphalt without serious threat of human injury; replace it with a wooden board, structurally unsuited to perform the desired scraping maneuver; and station a worker in an obvious position of peril to apply pressure to the board. Therefore, no percentage of fault should have been assessed to Dresser Industries (Galion Manufacturing Company).

INTERVENOR'S AWARD
Aetna Casualty and Surety Company also argues its award should include the "continuing payments" made after rendition of the judgment. We agree. LSA-R.S. 23:1101 provides a compensation carrier is entitled to reimbursement for compensation benefits paid prior to suit and subsequently until the judgment is final. Chatelain v. Project Square 221, 505 So.2d 177 (La.App. 4th Cir.1987), writ denied, 508 So.2d 71 (La. 1987); Willis v. Stauffer Chemical Company, 349 So.2d 1390 (La.App. 3rd Cir., 1977) (on rehearing), writ denied, 352 So.2d 1047 (La. 1977).
For the foregoing reasons, the judgment is reversed, in part, to rescind the 10% assessment of liability against Dresser Industries (Galion Manufacturing Company) and its insurer, Insurance Company of North America. Further, we find ample evidence in the record to assess this percentage of negligence to James Corporation which placed the board on the rear of the roller intending that it serve as a scraper, and as a result, placed its workers in an obvious position of peril by encouraging them to physically stand on the board to facilitate the scraping maneuver. We amend the judgment to incorporate in the award made to the intervenor, Aetna Casualty and Surety Company, all compensation benefits paid from rendition of judgment to finality of the judgment.
AFFIRMED AS AMENDED IN PART; REVERSED IN PART.