| FARAWAY, J.
In this appeal concerning personal injury and products liability, the trial court’s rulings granting summary judgment to the supplier of the coffee carafe which broke and the manufacturer of the carafe are challenged on the plaintiffs claim that genuine issues of material fact exist. Finding that the plaintiff did not present evidence raising a material issue of fact concerning an unreasonably dangerous product, we affirm the trial court’s holdings.

Facts

On July 8, 1995, Stephanie Myles, an employee of Wendy’s restaurant- in West Monroe, picked up a glass coffee pot which had not been sitting on a warmer shelf and filled it with hot water from a water machine to pour into the containers on the Superbar. Phyllis Griggs, the manager of the Wendy’s testified that she thought the coffee pot was fairly new because it still had Cain’s name stenciled on it; however, there was no indication that this carafe had never been previously used for brewing coffee. The carafe broke causing scalding hot water to spill on Myles’ right foot and left leg. Myles suffered third *634 degree burns to her right foot which required a skin graft and minor burns to her left leg. Immediately after the accident, employees of Wendy’s disposed of the broken pieces of the coffee pot.
Myles filed suit against Cain’s Coffee Co., Inc. (“Cain’s”) as the vendor or provider of the carafe. Cain’s supplied coffee for the Wendy’s establishment. As part of the coffee service, Cain’s gave Wendy’s glass coffee pots in which to serve the coffee. Myles alleged that the carafe appeared to be manufactured by Cain’s as Cain’s name was stenciled on the label on the coffee pot. Myles contended that the sole legal and proximate cause of the accident and her injuries resulted from a characteristic of the coffee pot which rendered it unreasonably dangerous in construction or composition, unreasonably dangerous in design, or unreasonably dangerous because Cain’s failed to give adequate warnings about these failure ^characteristics. Alternatively, Myles alleged that Cain’s was the proximate cause of the accident through its fault or negligence in failing to properly inspect the carafe, in failing to adequately warn or that Cain’s had the custody or garde of the coffee pot rendering it strictly liable to Myles under La. C.C. art. 2317. The Louisiana Restaurant Association Self Insurance Trust (the “Trust”), which was responsible for Wendy’s worker’s compensation benefits paid to Myles, intervened in this action seeking reimbursement for those benefits.
While at all times denying any liability to Myles, Cain’s filed a third-party demand against the manufacturer of the coffee pot, Bloomfield Industries, Inc. (“Bloomfield”).' The third party demand asserted that if Myles proved the carafe was somehow unreasonably dangerous or defective, and if Cain’s could be held liable under any theory advanced by Myles, then Cain’s was entitled to indemnity or contribution from Bloomfield. Despite being made a third-party defendant, Bloomfield was never made a defendant to Myles’ action in the principal demand.
Both Cain’s and Bloomfield filed motions for summary judgment. Due to differences in the filing dates of the motions, Bloomfield’s motion for summary judgment, as third-party defendant, was heard first and granted against Cain’s, as third-party plaintiff. Shortly thereafter, Cain’s motion was heard and Cain’s motion for summary judgment against Myles on the principal demand was also granted. Cain’s and Myles both appealed the granting of the motions for summary judgment. Cain’s position is that the summary judgment in its favor against Myles was proper and should be affirmed. However, if the summary judgment granted to Cain’s is reversed, Cain’s seeks to have its third-party demand against Bloomfield reinstated and the summary judgment granted to Bloomfield also reversed. Myles and the Trust argue that there were material issues of fact so that summary judgment was inappropriate.

13Summary Judgment Procedure

Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Ebarb v. Guinn Brothers, Inc., 31,426 (La.App.2d Cir.1/20/99), 728 So.2d 487. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966 C(l); Ebarb, supra. The burden of proof remains with the mover. La. C.C.P. art. 966 C(2); Ebarb, supra. Appellate review of summary judgment is de novo, utilizing the same criteria that guide the trial court’s grant of the judgment. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152.
If the moving party points out an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, the non-moving *635 party must produce factual support sufficient to establish he will be able to satisfy his evidentiary burden at trial; failure to do so results in no genuine issue of material fact and the proper granting of summary judgment. Smith v. General Motors Corp., 31,258 (La.App.2d Cir.12/9/98), 722 So.2d 348.

Discussion

The Louisiana Products Liability Act, La. R.S. 9:2800.51, et seq. (“LPLA”) establishes the exclusive theories of liability for manufacturers for damages caused by their products. A manufacturer of a product is liable for damages proximately caused by a “characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.” La. R.S. 9:2800.54; Slaid v. Evergreen Indemnity, Ltd., 32,363 (La.App.2d Cir.10/27/99), 745 So.2d 793.
Under the LPLA, liability may be imposed when a product is found to be unreasonably dangerous in- one of four ways: (1) construction or composition, (2) design, (3) inadequate warning or (4) nonconformity to express warranty. La. R.S. 9:2800.54. Under the LPLA, the plaintiff has the burden of proving that a product is unreasonably dangerous. La. . R.S. 9:2800.54(D). Defects are not presumed by the mere occurrence of an accident. Scott v. American Olean Tile Co., Inc., 97-1080 (La.App. 3d Cir.2/4/98), 706 So.2d 1091; Ortego v. Jefferson Davis Parish School Bd., 95-13 (La.App. 3d Cir.5/31/95), 657 So.2d 378, writ denied, 95-1669 (La.10/6/95), 661 So.2d 475.
The strict liability imposed by La. C.C. art. 2317 prior to the 1996 legislative changes requires the plaintiff to prove that the vice or defect of the thing is a condition which poses an unreasonable risk of harm to others. A determination of whether a thing presents an unreasonable risk of harm should be made “in light of all relevant moral, economic, and social consideration.” Celestine v. Union Oil Co. of California, 94-1868 (La.4/10/95), 652 So.2d 1299, quoting Entrevia v. Hood, 427 So.2d 1146 (La.1983). The risk-utility balancing test weighs factors such as gravity and risk of harm, individual and societal rights and obligations, and the social utility involved. Boyle v. Board of Supervisors, LSU, 96-1158 (La.1/14/97), 685 So.2d 1080.
Under both theories of recovery urged by Myles-—strict liability or products liability—proof of the existence of an unreasonably dangerous thing or product is central for Myles to. prevail with this claim. Upon Cain’s pointing out to the court that the broken remains of the particular coffee pot in question had been discarded, that uncertainty exists about Wendy’s use and the condition of that pot before the accident, and that Myles had picked up the cold pot and poured it full of very hot water immediately before the accident, Myles was required to defend against the motion for summary judgment by coming forward with evidence | ¿pointing to a defect in the carafe attributable to Cain’s or Bloomfield which caused the carafe to break. In order to raise a genuine issue of material fact, such evidence would have to begin to overcome two reasonable and significant inferences that can be drawn from these facts. First, a glass object exposed to a sudden change in temperature can shatter. If there is another explanation for the accident related to a defect in the carafe, Myles was required to demonstrate evidence raising the possibility of such defect. Second, the use and custody of the carafe by Wendy’s could have exposed it to prior damage.
The carafe in question was not being used at the time of the accident for brewing and dispensing coffee. The use for which Myles employed the pot was therefore different from its intended use. The evidence -indicates that the carafe was not a brand new carafe which had never been used to serve coffee. Therefore, the carafe had presumably, performed adequate *636 ly and safely for the dispensing of coffee yet had been exposed to the possibility of cracking or damage in its prior use.
Given this weak and, to a large extent, unexplained background information about a carafe which is now unavailable for inspection, Myles’ burden to show that it was an unreasonably dangerous and defective product would be a difficult task. In the face of summary judgment, Myles presented no information regarding the testing of other Cain’s/Bloomfield coffee pots and no information comparing the heated condition under which the carafe shattered and the conditions for which the coffee pot was intended to brew coffee. Compare, Independent Fire Insurance Company v. Sunbeam Corporation, 99-C-2181 (La.2/29/00), 755 So.2d 226. Without such information which might raise a genuine issue of material fact, we cannot say that such an issue of material fact regarding the alleged unreasonably dangerous condition is shown by the mere occurrence of the accident in this case.
| ¡-(Moreover, Myles presented no evidence regarding the control or garde element of her alleged claims for products or strict liability. In the products liability act, “the time the product left the manufacturer’s control” is a critical element for proof of both a construction defect (La. R.S. 9:2800.55) and a design defect (La. R.S. 9:2800.56). Within that time of control, Bloomfield was not shown to have damaged the carafe in the manufacturing process or designed the product in a substandard or negligent manner.
Likewise, for the purpose of strict liability, garde is present when one has the right of direction and control over the thing and derives some benefit from it. King v. Louviere, 543 So.2d 1327 (La.1989). Cain’s presented evidence that it provided the glass carafes to Wendy’s as a complimentary part of its coffee service. Griggs’ deposition establishes that Wendy’s had full control over the use and care of the carafes after Cain’s delivered them to the Wendy’s restaurant. Therefore, garde and ownership of the carafe were in Wendy’s at the time of the accident.
As a final issue, Myles alleges a failure to warn of the possibility of the danger of the carafe’s shattering. As stated above, Myles has not raised factual issues indicating that because of the manufacture of the product or its design, the carafe was defective. Nevertheless, this glassware product designed for use in receiving freshly brewed hot coffee was used by Myles to suddenly receive extremely hot water.
Pursuant to La. R.S. 9:2800.57(B), a manufacturer is not required to provide an adequate warning about its product when:
(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product’s characteristics; or
(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of |7the product that may cause damage and the danger of such characteristic.
To be relieved of the duty to warn, a manufacturer need not show that the user had actual knowledge of the danger, only that the user should have known of the danger. Goins v. Galion Mfg. Co., 626 So.2d 1200 (La.App. 3d Cir.1993), writ denied, 93-2888 (La.1/28/94), 630 So.2d 792.
Given no explanation for any other cause for the breakage of the carafe, this issue of warning turns on whether it is a reasonably known or contemplated danger that a glass pot will shatter when extremely hot liquid is poured into it. Myles testified that she knew the carafe was made of glass. Griggs testified that employees were trained to use the plastic pots provided with the hot water machine to transport water because hot water *637 poured directly into a non-warmed glass pot could cause it to break. It is common knowledge that a characteristic of glass is it will break when subjected to sudden extreme temperature differences. We therefore hold that the coffee pot was not unreasonably dangerous due to inadequate warning because an ordinary user or handler of the product would contemplate this potentially dangerous characteristic of glass and Myles already knew or reasonably should be expected to have known of this characteristic.

Conclusion

For the foregoing reasons, finding that the plaintiff has not produced factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial, we affirm the trial court’s rulings in favor of Cain’s and Bloomfield. Costs of this appeal are assessed to Myles.
AFFIRMED.