607 So.2d 615 (1992)
William H. JOHNSON and Lydia A. Johnson
v.
CHICAGO PNEUMATIC TOOL COMPANY (McDermott, Inc., Intervenor).
No. 91 CA 0938.
Court of Appeal of Louisiana, First Circuit.
July 1, 1992.
Writ Denied November 6, 1992.
*616 Terrance Hoychick, Young, Burson, Hoychick & Aguillard, Eunice, Edward F. Bass, Lake Charles, for petitioner first-appellant.
Charles J. Boudreaux, Jr., Pugh & Boudreaux, Lafayette, for Chicago Pneumatic Tool Co. and Travelers Ins. Co. defendant.
John A. Keller, Onebane Firm, Lafayette, for McDermott, Inc. (intervenor/second appellant).
Henry G. Terhoeve, Baton Rouge, for Louisiana Ins. Guar. Ass'n.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
This is a products liability action in which William H. Johnson was injured in the course of his employment when a pipejack was accidentally propelled toward Johnson striking him in the back, pinning him between the edge of the large diameter pipe which he was grinding and the pipejack. A pipejack is a large mechanical device which is inserted into large pipes which are in the process of being joined together. The pipejack applies pressure forcing the joints into an evenly rounded shape which can then be welded together. The movement of the pipejack was controlled by an air winch manufactured by Chicago Pneumatic Tool Company (Chicago Pneumatic) which had been utilized and incorporated by McDermott, Inc., Johnson's employer, into a system dedicated to the fitting or joining of large diameter pipe. The accident occurred at the McDermott shipyard when a coemployee either tossed or laid a fifty gallon drum on the ground near the winch in the area where Johnson was working. The drum rolled and toppled over onto the winch throttle pushing the throttle downward which in turn activated the winch and *617 caused the pipejack to move toward Johnson.
Johnson instituted this action against Chicago Pneumatic as manufacturer of the winch, alleging that the winch as designed and manufactured was unreasonably dangerous to normal use. McDermott intervened in this action. After trial on the merits, the jury rendered a special verdict in favor of defendant. Judgment was entered accordingly. From this judgment plaintiffs appeal alleging as error (1) the jury's determination that the winch was not engaged in "normal use" at the time of the accident; and (2) the trial court's failure to grant plaintiffs' and intervenor's motions for new trial based on alleged prejudicial remarks made by defense counsel in opening statement.

NORMAL USE OR MISUSE
It is uncontroverted that at the time of the accident Johnson was working with his back to the pipejack and the winch; the winch was not being manually operated; and no one was standing at or adjacent to the winch controls. The clutch lever had previously been welded down by McDermott and as a result the clutch remained permanently engaged. Of the other winch controls, the throttle was set in the neutral position and neither the brake nor the safety lock was engaged.
In answer to special interrogatories the jury specifically found that the winch was not engaged in an intended or foreseeable use or misuse at the time of the accident. Plaintiffs contend that the winch was unreasonably dangerous because the throttle had no locking device or guard which would have prevented its being inadvertently activated or engaged. They allege that McDermott's modification of the clutch, the operator's failure to use the handbrake and/or the safety lock are foreseeable misuses of the product which Chicago Pneumatic as manufacturer should have foreseen and altered the design of the winch to prevent such misuse.
In order to prevail in a products liability action a plaintiff must prove that his damage was a result of a condition of the product which made the product unreasonably dangerous to normal use. Bloxom v. Bloxom, 512 So.2d 839 (La.1987). The "normal use" of a product encompasses all intended or foreseeable uses and misuses of the product. Ingram v. Caterpillar Machinery Corp., 535 So.2d 723 (La.1988). A manufacturer is obliged to adequately warn the user of any danger inherent in the normal use of the product which is not within the knowledge of or obvious to the normal user. The manufacturer is also required to anticipate the environment in which the product will be used and to notify the user of the potential risks arising from foreseeable use or misuse in the foreseeable environment. Bloxom, 512 So.2d at 843.
The winch as manufactured contained the following controls: a clutch, handbrake, throttle and safety lock. The clutch, handbrake, throttle and safety lock were labeled by the manufacturer prior to delivery. However at the time of the accident the labels on the winch at issue had been either painted over or destroyed by the winch's constant exposure to the elements. Based on its serial number it was determined that the winch was either manufactured in 1950, 1951 or 1965. Neither McDermott nor Chicago Pneumatic had any record of when the winch was purchased. However the winches manufactured in 1965 were virtually identical to those manufactured in 1950 and 1951. McDermott had no instruction manual in its files regarding operation of the winch. If the winch at issue was manufactured in 1965 it was the standard practice of Chicago Pneumatic to furnish an instruction manual to the purchaser. It is uncertain whether an instruction manual corresponding with the 1950 or 1951 models was ever printed or distributed or if it was whether McDermott ever possessed one.
The manual accompanying the winches manufactured in 1965 recommend periodic adjustment of the hand brake and clutch bands and provide instructions on raising and lowering a load, dragging a load, and holding a load. These maneuvers are correctly accomplished by utilization of the *618 clutch and hand brake. It further provides that when holding a load (such as a pipejack) in the desired position "[l]ock handbrake, which will cam over and hold load in desired position. CAUTION: After locking brake always engage safety lock to assure positive locking."
Several McDermott employees who worked near or operated the winch testified that they had not been instructed by McDermott to engage the brake or safety lock or to turn off the winch air supply when the winch was not in operation or when holding a load. They stated that had they been so instructed they would have done so. Several employees stated that they were unaware that the winch was equipped with a clutch and safety lock.
Brian Anthony Doré, the group safety director for McDermott, stated that the supervisor is responsible for seeing that his employees are familiar with all the equipment being used in the yard. He stated that he had never operated the winch and mistakenly assumed that the clutch lever was actually a second handbrake.
James Boudreau was the superintendent for McDermott at the time of the accident. Mr. Boudreau was under the impression that the winch had two brakes, and erroneously believed that the clutch was a second brake. In his opinion the process in which the pipejack is inserted into the pipe and held in that position is described as holding a horizontal load. In that scenario the brake and safety lock must be used to hold the load. He stated that at the time of the accident the pipejack was not inserted into the pipes, it was laying dormant or not in use and in that situation the winch is not "holding a load", thus, the brake and safety lock need not be utilized to prevent inadvertent activation of the winch.
Joseph K. Adelman, accepted by the court as an expert in mechanical engineering, testified on behalf of plaintiffs that the winch was defective in that the throttle should have had a "locked neutral detente of position" thereby requiring deliberate action to activate the throttle and upon release of the throttle lever, the throttle would automatically return to a neutral locked position, thus preventing its inadvertent activation. He stated that neither the handbrake nor the safety lock were adequate safety devices which negated the need for the throttle "locked neutral detente of position" because the brake and safety lock required deliberate action to be engaged and could be accidentally disengaged. He further stated that a warning or instruction should have been given either directly on the winch or in an accompanying manual informing winch operators to use the safety lock whenever the winch was not in operation. Adelman expressed the opinion that the instruction manual did not adequately and concisely instruct the user that the handbrake and the safety lock should be engaged when the machine was not being operated and that Chicago Pneumatic could not reasonably expect the plant safety director to so instruct his employees.
On cross examination Adelman acknowledged that the winch was designed to be operated in such a manner that the operator faced the control levers thus giving the operator better access to the throttle, brake, clutch and safety lock. However, McDermott had incorporated the winch into a system which required the winch operator to stand either behind or to the side of the winch during its operation thus preventing the operator's easy access to the controls. In so doing McDermott was forcing its winch operators to use the winch in a manner not recommended by Chicago Pneumatic. Adelman further admitted that if the handbrake had been engaged and the clutch disengaged, the accident would not have happened; if the clutch had been disengaged, regardless of whether the handbrake was engaged, the accident would not have happened; and if the safety lock been engaged, even if the brake had accidentally disengaged, the accident would not have happened.
Tom Nolan was employed by Chicago Pneumatic as a field engineer dealing with problems related to its portable air tools and air operated equipment. Nolan stated that defendant could not anticipate that McDermott would have modified the winch *619 by welding down the clutch lever and installing the winch in such a manner that the operator was required to man the winch from a direction other than directly facing the winch controls or front of the winch. Nolan stated that the drum does not rotate unless the clutch is engaged. Had the clutch been disengaged and the throttle been accidentally activated the drum would not have rotated; a properly adjusted brake would have held the load even with the clutch engaged; and the engagement of the safety lock or safety pin alone would have held the load, regardless of whether the brake or clutch had been engaged.
Dr. Jud King was accepted by the court as an expert in the fields of human factors, applied experimental psychology, engineering psychology and ergonomics. Dr. King expressed the opinion that McDermott modified the winch in a manner which made the winch unsafe, i.e. welding down the clutch and installing the winch backwards. The backwards installation prevented the operator from properly operating the controls and the welding of the clutch removed a safety control which prevented operation of the winch as instructed in the manual. He further stated that the McDermott employees were not familiar with the controls and had been inadequately instructed by McDermott in the proper operation of the winch. He expressed the opinion that the method designed by Chicago Pneumatic to prevent inadvertent activation of the throttle is to require the operator to depress an auxiliary lever (the clutch) while engaging the throttle. Thus the winch was not unreasonably dangerous in requiring manual operation of the clutch, brake and safety lock which were designed to be used to prevent accidental activation of the winch.
Leon Denson was accepted by the court as an expert in the field of mechanical engineering and testified on behalf of defendant. Denson stated that if the clutch had not been welded down (engaged) the accident would not have occurred; if the clutch and brake had been engaged, the accident would not have occurred; if the clutch and safety lock had been engaged and the brake not engaged, the accident would not have occurred. In his opinion the absence of a lock or pull device on the throttle did not make the winch unreasonably dangerous in normal use because the winch as designed by Chicago Pneumatic required the activation of a secondary device (the clutch) in addition to the throttle to energize the winch. Additionally there were two additional devices for stopping the drum rotation (the brake and safety lock).
The finding of the jury that the winch was not employed in normal use at the time of the accident is a factual determination which should not be set aside unless clearly wrong. Lirette v. State Farm Insurance Co., 563 So.2d 850 (La.1990). A review of the record reveals that McDermott modified the winch by permanently engaging the clutch; that this modification permanently removed one of the safety and control features designed for its safe and proper operation; the disengagement of the clutch without the engagement of the additional safety features would have prevented the accident; the basic safety mechanisms of the winch were not utilized; the winch was installed backwards thereby requiring the operator to stand away from the controls; and the employees/operators were uninformed regarding familiarity with the controls and proper operation of the winch. After careful review of the record we conclude that the jury's determination in this matter is not manifestly erroneous.

NEW TRIAL
In the second assignment of error appellants contend that the trial court erred in refusing to grant a new trial due to alleged prejudicial remarks made by defense counsel in opening statement.
BY MR. BOUDREAUX:
The reason they welded down that clutch, by the way, is because you can't reach over a winch like this and operate it with, you know, from backwards, you know. So they had to, they had to weld that clutch down because it was a hassle to operate it because they had to reach *620 over and, and I don't blame them, you know, but who forced them into that? Not Chicago Pneumatic. Now, don't get me wrong, I don't blame them, I say I don't blame them, I still blame them for, you know, welding down that clutch, that's not the way to do it. But you know, you don't turn something backwards and weld down the clutch, and then sue Chicago Pneumatic for it. We have so little American industry left in this country.
BY MR. HOYCHICK:
Objection, Your Honor.
BY THE COURT:
Sustained.
BY MR. BOUDREAUX:
I just got carried away, I'm sorry. By the way, if there's anything I do during this trial that offends you, you know, if I say something, I want you to know that I have a client and it affects my, please don't have anything that I say that might offend you affect my client, `cause I'm here to represent them, I feel strongly about what I'm doing and if I get out of line, I apologize.
Plaintiff's motion for judgment not withstanding the verdict and alternatively for new trial was sought on the grounds that the jury's verdict was contrary to the law and evidence. On appeal, however, they contend that the trial court did not instruct the jury to disregard defense counsel's remark, nor did the court instruct the jury that the jury should not allow sympathy for American industry and/or the defendant to affect its decision. Thus, appellants allege that they are unable to determine the effect of these alleged prejudicial remarks on the jury.
Prior to the commencement of deliberation, the trial judge instructed the jury that its verdict should be based upon an impartial consideration of all the evidence "and on nothing else"; the jury's decision should be made without sympathy, prejudice or emotion; and that arguments or statements of counsel should be disregarded because they are not in evidence. The jury was clearly admonished to disregard arguments of counsel and to arrive at its decision without prejudice.
The trial judge has much discretion to grant or deny a motion for a new trial and such determination should not be set aside absent an abuse of discretion. Petitto v. McMichael, 588 So.2d 1144 (La.App. 1st Cir.1991), writ denied, 590 So.2d 1201 (La. 1992). After careful review of the record we find no abuse of discretion herein. Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed against appellants.
AFFIRMED.
SHORTESS, J., concurs in result.