651 So.2d 1344 (1995)
Mike Wayne HOYT, et al.
v.
WOOD/CHUCK CHIPPER CORP., et al.
No. CA 92 1498R.
Court of Appeal of Louisiana, First Circuit.
January 6, 1995.
Dissenting Opinion February 2, 1995.
Rehearing Denied February 23, 1995.
*1348 John P. Wolff, III, Baton Rouge, for defendant/first appellant, Margot, Inc.
J. Peyton Parker, Jr., Baton Rouge, for plaintiff/second appellant, Mike Wayne Hoyt.
Deborah P. Gibbs, Baton Rouge, for plaintiffs Mike and Leona Hoyt.
Jeffery F. Speer, Frank Flynn, Lafayette, for intervenors/3rd appellants, Intern. Tree Co. and Houston General Ins. Co.
David T. Butler, Jr., Baton Rouge, for defendant/appellee, Goforth Industries.
William Schuette, Baton Rouge, for defendant/appellee, Wood/Chuck Chipper.
Felix Weill, Baton Rouge, for defendant/appellee, Perkins Engine, Inc.
Before CARTER, GONZALES, WHIPPLE, FOGG and PARRO, JJ.
WHIPPLE, Judge.
This case is before us on remand from the Supreme Court. For the following reasons, we reverse the trial court's granting of judgment notwithstanding the verdict on the issue of liability and affirm the jury's verdict on the issue of damages.

FACTS AND PROCEDURAL HISTORY
On January 26, 1989, plaintiff, Mike Wayne Hoyt, was seriously injured while changing the blades on a woodchipper owned by his employer, Myron J. "Jim" Luck, d/b/a International Tree Company (International). The woodchipper was purchased by International from the distributor, Goforth Industries, Inc. (Goforth Industries), and was manufactured by Wood/Chuck Chipper Corp. The diesel engine of the machine was manufactured by Perkins Engines, Inc.
Three weeks prior to Mr. Hoyt's accident, International had taken the woodchipper to Margot, Inc. for repairs to the ignition system. Margot, Inc. installed a new ignition flip switch (or "toggle" switch) to turn the machine on and off in place of the ignition key which had been installed by the manufacturer.
Mr. Hoyt was the first person to change the blades of the chipper after the keyed switch was replaced with a toggle switch. As Mr. Hoyt was changing the blades, he accidently hit the toggle switch, turning the chipper on and seriously injuring his hands on the moving blades.
Mr. Hoyt and his wife, Leona Hoyt, sued Wood/Chuck Chipper Corp.; Goforth Industries, Inc. and its insurer, National Union Fire Insurance Co. of Pittsburgh, PA; Margot, Inc. and its insurer, Continental Casualty Company; and Perkins Engines, Inc. International and its insurer, Houston General Insurance Company, filed a petition of intervention to recover medical expenses and weekly compensation benefits paid to Mr. Hoyt. The defendants filed various cross-claims. Prior to trial, plaintiffs dismissed their suit against Goforth Industries, Inc., with prejudice.
After trial on the merits, the jury found International to be 65 percent at fault and Mr. Hoyt to be 35 percent at fault, and assessed damages at $1,302,285.43 for Mr. Hoyt and $100,000.00 for Mrs. Hoyt. Because International was Mr. Hoyt's employer, International was statutorily immune from tort liability under LSA-R.S. 23:1032 (and thus not a named defendant), with the result that although the jury assessed substantial damages, none would be paid to the Hoyts.
International and plaintiffs filed motions for judgment notwithstanding the verdict or, in the alternative, for new trial. The trial court granted the motion for judgment notwithstanding the verdict and denied the motion for new trial. The trial court, by amended judgment notwithstanding the verdict, reapportioned fault as follows: International55.25%; Mr. Hoyt29.75%; Margot, Inc.15%; Wood/Chuck Chipper Corp. 0%; and Perkins Engines, Inc.0%. Plaintiffs, Margot, Inc. and its insurer, and International and its insurer appealed. Numerous assignments of error were raised by the appellants.
In our original opinion, we reversed the granting of the judgment notwithstanding the verdict and remanded the case to the trial court for a new trial. Hoyt v. Wood/ Chuck Chipper Corp., 625 So.2d 504 (La.App. 1st Cir.1993). Writs were sought by Mr. Hoyt, Perkins Engines, Inc., Wood/Chuck Chipper Corp., and Margot, Inc. The Louisiana *1349 Supreme Court granted writs, vacated our judgment and remanded the case to this court "to decide the case." Hoyt v. Wood/ Chuck Chipper Corp., 630 So.2d 783, 784 (La.1994).

REMAND
In granting writs and vacating this court's judgment, the Louisiana Supreme Court directed as follows: "Case remanded to the court of appeal to decide the case." We interpret this as an instruction to make a full determination of the merits. Gonzales v. Xerox Corporation, 320 So.2d 163, 165-166 (La.1975); Myers v. American Seating Company, 93-1350 (La.App. 1 Cir. 5/20/94), 637 So.2d 771, 778.
The Supreme Court in Gonzales held that when the trial court judgment must be disregarded and the entire record is before the appellate court, the appellate court should render judgment on the merits. Gonzales, 320 So.2d at 165. When a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law forecloses any finding of fact, the appellate court must review the record de novo and render a judgment. Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707, 708 (La.1980).
As this court stated in its previous decision, the jury's answers to the interrogatories resulted in a severely injured plaintiff being awarded a large damage award by the jury for which he was unable to recover any amount. Hoyt, 625 So.2d at 507. This court concluded that the trial court erred in granting judgment notwithstanding the verdict and in denying the motion for new trial, which this court deemed necessary, in the interests of justice. Thus, we ordered remand of the matter for a new trial. Hoyt, 625 So.2d at 507. However, considering the Supreme Court's dictate to us to "decide the case," as well as the jurisprudence cited above, we conclude that the proper action for this court to take is to decide the issues of fault and apportionment of fault de novo and render judgment accordingly.

FAULT OF THE PARTIES

Margot, Inc.
Plaintiffs contend that Margot, Inc. is at fault in causing Mr. Hoyt's accident because it was negligent in replacing the keyed ignition with a simple toggle switch. To establish liability in a negligence case, the plaintiff must show that: (1) the defendant had a duty to conform its conduct to a specific standard, (2) the defendant's conduct failed to conform to the appropriate standard, (3) the defendant's substandard conduct was a cause of the plaintiff's injuries, and (4) the risk of harm was within the scope of the breached duty. Fox v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 576 So.2d 978, 981 (La.1991).
Three weeks prior to the accident in question, Mr. Luck brought the woodchipper to Margot, Inc. to have the ignition system repaired. Ronald LeBlanc, the service writer at Margot, Inc. who spoke with Mr. Luck, testified that he walked outside with Mr. Luck to look at the chipper, and Mr. Luck asked him to replace the keyed ignition switch with a toggle switch because his employees were going home with the keys and forgetting to bring them back to work the next day. The original repair order was written on a note pad which could not be located by Mr. LeBlanc.
Tommy Fitzsimmons, the mechanic at Margot, Inc., who replaced the keyed switch with a toggle switch, testified that he thought the repair was unsafe. Mr. Fitzsimmons questioned Mr. LeBlanc about the repair to be performed. He asked Mr. LeBlanc if he was sure this was what the owner wanted. Despite the mechanic's concerns, no one working for Margot, Inc. discussed the safety aspects of this repair with Mr. Luck.
Louis Margot, the owner of Margot, Inc., testified that it was company policy to replace machine parts with the same part, unless the customer requested that it be replaced with a different part. Mr. Margot also testified that it was company policy that a mechanic performing a repair he found to be unsafe should speak to the shop foreman, *1350 and the shop foreman should then contact the equipment owner.
We find that Margot, Inc. is partially at fault in causing the accident for violating its internal policy when it failed to inform Mr. Luck that it believed the repair was unsafe and in negligently performing a repair, which constituted an unsafe alteration of the equipment. Margot's replacing of the keyed switch with the toggle switch made it easier for the engine to start accidentally, and increased the likelihood that, as happened here, the engine would be engaged accidentally, resulting in the injuries suffered by Mr. Hoyt. Moreover, Margot's duty to perform repairs in a safe manner encompassed the risk that an individual using a piece of equipment negligently repaired by Margot would be injured.

International
Any fault on the part of International, Mr. Hoyt's employer, must also be considered. See Gauthier v. O'Brien, 618 So.2d 825, 831 (La.1993). Myron J. "Jim" Luck, owner of International, testified that he did not ask Margot, Inc. to replace the keyed switch with a toggle switch. However, we find that Mr. Luck was also at fault, whether he specifically requested that the keyed switch be replaced with a toggle switch or simply failed to warn Mr. Hoyt of the danger of the toggle switch before allowing him to change the blades on the chipper.
Mr. Luck testified that he had been in the tree trimming business for thirty-two years and had been licensed for twenty-four years. Considering Mr. Luck's experience in the business, we conclude that he should have been aware of the danger of the toggle switch, should have informed his employees of the replacement of the keyed switch with the toggle switch and should have discussed additional safety precautions with them. Mr. Luck admitted that he had no training programs for his employees and that he had never given them any instructions or warnings regarding the blade changing process.
The record further reveals that a blade guard had been provided to Mr. Luck when he purchased the woodchipper. A blade guard is a metal device which is placed over the blades of the woodchipper when the blades are changed. The purpose of the blade guard is to protect the worker performing the task of changing the blades. Mr. Luck testified that he received the blade guard with the woodchipper, but he did not give the blade guard to his workers.
Thus, we conclude that International was likewise negligent through the conduct of Mr. Luck in negligently failing to take any steps to ensure that employees operated the equipment in a safe manner and that this negligence also contributed to Mr. Hoyt's accident.

Michael Hoyt
While in the process of changing the blades of the chipper, Mr. Hoyt inadvertently hit the control panel, turning on the toggle switch and causing the blades of the chipper to rotate.
Mr. Hoyt admitted that the first thing he was trained to do prior to changing the blades was to confirm that the chipper was turned "off." He testified that when he worked for Asplundh, his practice in changing blades was to turn the key to the "off" position and place the key in his pocket to ensure that no one could turn the chipper on while he was changing the blades.
However, Mr. Hoyt testified that in the instant case, he did not check the control panel to ensure that the chipper was turned off. In fact, he did not notice that the keyed switch had been replaced by a toggle switch. Mr. Hoyt admitted that had he noticed that the keyed switch had been replaced by a toggle switch, he would have been concerned about his safety. Mr. Hoyt could have disconnected the battery before changing the blades to prevent the possibility that the toggle switch would be turned on. Had the battery been disconnected, the accident would not have occurred. Thus, we conclude that Mr. Hoyt's negligence while changing the chipper blades was also a cause of the accident.

*1351 Perkins Engines, Inc.

Plaintiffs' claims against Perkins are premised on the Louisiana Products Liability Act. LSA-R.S. 9:2800.51 et seq. In order to prevail in a products liability action, a plaintiff must prove that his damage was a result of a condition of the product which made the product unreasonably dangerous to foreseeable uses and misuses. LSA-R.S. 9:2800.54; Johnson v. Chicago Pneumatic Tool Company, 607 So.2d 615, 617 (La.App. 1st Cir.), writ denied, 608 So.2d 1009 (La. 1992). The characteristic of the product that renders it unreasonably dangerous must exist at the time the product left the control of the manufacturer if it is a defect in construction or composition. If the unreasonably dangerous characteristic of the product is in the design or adequacy of the warning, the characteristic must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product. LSA-R.S. 9:2800.54(C).
Perkins Engines manufactured the diesel engine that was installed as the power unit on the woodchipper involved in this lawsuit. The power unit manufactured by Perkins Engines was a shelf item which was not manufactured for a specific industry or manufacturer. Rather, the unit was used for many different applications. The instrument panel on the particular power unit involved in this case was located on the left-hand side. However, testimony revealed that the control panel could have been located on either side of the power unit.
The unit, as manufactured by Perkins, contained a keyed ignition switch, a "tattletale" button and a starter button on the starter panel. To engage the engine, several steps had to be followed: (1) the key had to be placed into the key switch, (2) the key then had to be turned to the "on" position, (3) the tattletale button had to be depressed for a period of time to allow the oil pressure to build up, and (4) the starter button had to be pushed. If the keyed ignition switch remained in the "off" position, the pushing of the tattletale button or the starter button would not cause the engine to engage.
Thus, with the proper use of a keyed ignition switch, there is no danger of inadvertent activation of the power unit. Had the keyed ignition switch still been in place at the time Mr. Hoyt changed the blades of the woodchipper and had he properly removed the key after turning it to the "off" position, the accident in question could not have happened.
Considering the foregoing, we conclude that the power unit, as manufactured by Perkins, was not unreasonably dangerous. Moreover, based on the testimony of record, we find that the replacement of the keyed ignition switch with a toggle switch constituted a material alteration of the power unit after it left the control of Perkins, which Perkins could not have reasonably anticipated.

Wood/Chuck Chipper Corp.
Any fault on the part of Wood/Chuck Chipper must also be considered under the Louisiana Products Liability Act. LSA-R.S. 9:2800.51 et seq. Plaintiffs contend that the woodchipper manufactured by Wood/Chuck Chipper was unreasonably dangerous because: (1) it differed from design specifications of the manufacturer; (2) its instrument panel was in an awkward and dangerous location; (3) it contained no warnings or instructions regarding changing of the blades; and (4) it could have utilized a rotor lock, a simple safety device which would have prevented the accident.
Plaintiffs' first two complaints deal with the location of the instrument panel, which they contend differed from Wood/ Chuck Chipper's design specifications. According to plaintiffs, the accident could not have happened if the instrument panel had been located according to the design specifications. The location of the instrument panel required an individual changing the chipper blades to position himself with his back facing the panel, which plaintiffs contend gave rise to the potential for inadvertent activation of the chipper. However, we do not believe that the position of the instrument panel rendered the chipper unreasonably dangerous.
*1352 Regardless of the location of the instrument panel, with the keyed ignition switch, removal of the key guaranteed that the chipper could not be turned on. As we stated in our discussion of Perkins' fault, with the proper use of a keyed ignition switch, there is no danger of inadvertent activation of the chipper. The design experts who testified acknowledged that the keyed ignition switch constituted a safety feature intended by the manufacturer to prevent accidental activation of the chipper. Therefore, we conclude that the chipper did not present an unreasonable risk of inadvertent activation in its original condition.
The keyed ignition switch was replaced with the toggle switch after the chipper left the control of Wood/Chuck Chipper. By substituting a toggle switch, which could easily be bumped into the "on" position, a critical safety element of the chipper was defeated. Moreover, expert testimony established that this alteration of the chipper was not one which Wood/Chuck Chipper should have anticipated. A manufacturer's duty to anticipate that users might replace certain worn out parts on its product does not include the risks occasioned by the use of improper or substandard replacement parts. Goins v. Galion Manufacturing Company, A Division of Dresser Industries, Inc., 626 So.2d 1200, 1204 (La.App. 3rd Cir.1993), writ denied, 630 So.2d 792 (La.1994).
Furthermore, we believe that plaintiffs' contention that the chipper was unreasonably dangerous because it did not contain a rotor lock ignores the fact that the keyed ignition switch served as a safety device to prevent inadvertent activation of the chipper during the blade changing process.
Plaintiffs further contend that the chipper was unreasonably dangerous because it did not contain adequate warnings or instructions with regard to changing the blades. A product is unreasonably dangerous because an inadequate warning was not provided if, at the time the product left the manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning. LSA-R.S. 9:2800.57(A). However, LSA-R.S. 9:2800.57(B) provides as follows:
A manufacturer is not required to provide an adequate warning about his product when:
(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or
(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
In the instant case, Mr. Hoyt's testimony demonstrates his awareness that when changing the blades of a chipper, he should turn the ignition switch "off" and remove the key to prevent accidental activation of the chipper. Thus, under the facts of this case, no warning was required of Wood/Chuck pursuant to LSA-R.S. 9:2800.57(B)(2), since Mr. Hoyt had actual knowledge of the danger associated with failing to ensure that the chipper had been turned off and that the ignition key had been removed. See Gautreaux v. Tex-Steam Co., 723 F.Supp. 1181, 1182 (E.D.La.1989), aff'd, 921 F.2d 274 (5th Cir.1990). Moreover, Wood/Chuck Chipper obviously had no duty to warn the user of the dangers associated with an alteration of the product which it could not reasonably foresee.
Considering the foregoing, we find that plaintiffs failed to prove that the woodchipper manufactured by Wood/Chuck Chipper was unreasonably dangerous. Thus, we find no fault on the part of Wood/Chuck Chipper.

APPORTIONMENT OF FAULT
In Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985), the Louisiana Supreme Court set forth five factors to be considered in apportioning fault, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) the extent of the risk created by the conduct; (3) the significance of what was sought by the conduct; *1353 (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
The factors enumerated weigh heavily in favor of Mr. Hoyt. Mr. Hoyt was momentarily inattentive when he accidentally came into contact with the control panel. Margot, on the other hand, was a commercial repair shop, responsible for making safe repairs to equipment. The Margot mechanic testified that at the time he made the repair, he believed the repair was unsafe. Moreover, the mechanic and service writer discussed the peculiarity of this repair, but never related to the customer, International, their legitimate concerns about the safety of the alteration and the danger of this modification, despite company policy which required them to do so. Rather, Margot's employee simply performed the repair, knowing it was unsafe.
The magnitude of the risk created by Margot's actions in violating its own policy and the greater experience of Margot's employees in assessing and repairing such mechanical devices make its actions much more egregious than Mr. Hoyt's actions in inadvertently hitting the newly installed toggle switch while changing the blades of the chipper.
Regarding the fault of Mr. Luck and International, we believe that Mr. Luck, who had been in the tree trimming business for thirty-two years, should have been aware of the extreme danger and potential for serious injury posed by the substituted toggle switch during customary use of the machine, including changing the blades of the woodchipper. Mr. Luck did not act to ensure the safety of those who used his equipment. He did not train his employees regarding this procedure, did not warn them of the replacement of the keyed ignition switch with the toggle switch and did not supply a blade guard for the machine. Thus, we also conclude that the actions of International, including the failure to act on the part of Mr. Luck, were more egregious than the actions of Mr. Hoyt.
After careful consideration of the testimony and evidence in the record herein,[1] we apportion fault as follows: Margot, Inc. 40%; International40%; and Mr. Hoyt 20%. Because this case involves a statutorily immune employer, we are required to reapportion International's allocated fault between Mr. Hoyt and Margot, Inc. Gauthier, 618 So.2d at 831-833. Accordingly, fault is reallocated to Margot, Inc. at 66.67% and to Mr. Hoyt at 33.33%.[2]

DAMAGES
Plaintiffs assign as error the trial court's determination of the economic loss suffered by Mr. Hoyt. They contend that the jury erred in failing to award the amount proven for past lost earnings and future loss of earning capacity. Margot, Inc. also assigns as error the jury's award of past lost earnings, contending that plaintiffs presented no competent evidence to establish Mr. Hoyt's loss.
Because we find the error by the trial court in improperly granting judgment notwithstanding the verdict on the issue of fault did not interdict the jury's determination of damages,[3] we will review the damage awards under the abuse of discretion standard, rather than de novo. Landry v. Doe, 597 So.2d 14, 20 n. 6 (La.App. 1st Cir.1992). Before an appellate court can disturb an award made by the trier of fact, the record must clearly reveal that the trier of *1354 fact abused its much discretion in making its award. Ly v. State, Department of Public Safety and Corrections, 633 So.2d 197, 205 (La.App. 1st Cir.1993), writ denied, 634 So.2d 835 (La.1994).
Prior to the accident in question, Mr. Hoyt worked in the tree care business, operating his own business as Mike Hoyt's Tree Care. From time to time, Mr. Hoyt worked for Mr. Luck as a tree climber when Mr. Luck needed additional help, as he was doing at the time of the accident.
As a result of the accident, Mr. Hoyt suffered subtotal amputation of the index, middle, ring and little fingers on both hands, meaning the fingers were still attached, but were just dangling. Mr. Hoyt immediately underwent a surgical procedure to reattach his fingers, which included repair of lacerations of the flexor tendons, digital nerves, arteries and veins of his fingers. After having undergone numerous medical procedures, Mr. Hoyt's index fingers on both hands are functioning, but his other fingers are stiff. As a result of the injuries, Mr. Hoyt cannot perform any physical work with his hands and is unable to return to employment as a tree climber.
The jury awarded Mr. Hoyt $84,000.00 for loss of past earnings from the date of accident, January 26, 1989, until the date of trial in August of 1991. The record reveals that in the three years prior to Mr. Hoyt's accident, he listed his earnings as follows: 1986$9,970.00, 1987$27,245.00, and 1988$46,270.00.[4]
Plaintiffs' economics expert, Dr. William Culbertson, estimated Mr. Hoyt's loss of past earnings to be $158,820.00, based on an earning capacity of $50,000.00 per year. In arriving at this proposed earning capacity, Dr. Culbertson did not investigate the accuracy of the past earnings figures submitted to him.
Apparently, the jury did not accept Dr. Culbertson's proposed earning capacity of Mr. Hoyt. Considering his actual earnings for the three years prior to the accident, we cannot conclude that the jury abused its discretion in its award of $84,000.00 for loss of past earnings.
Regarding the award for loss of earning capacity, awards of loss of future income are speculative by nature and cannot be calculated with mathematical certainty. Therefore, the trier of fact necessarily must have much discretion in fixing such awards. Martino v. Sunrall, 619 So.2d 87, 90 (La. App. 1st Cir.), writ denied, 621 So.2d 821 (La.1993).
The jury awarded Mr. Hoyt $382,200.00 for loss of future earnings. Dr. Culbertson estimated Mr. Hoyt's loss of future earnings to be $815,787.00, again based on an earning capacity of $50,000.00 per year and a work life expectancy of seventeen and a half years. This figure was also based on an accelerated growth rate for a period of several years, based on Dr. Culbertson's belief that Mr. Hoyt's income would increase during that time. Dr. George Randolph Rice, an expert economist called by Perkins Engines, Inc., explained that this accelerated growth rate had the effect of substantially increasing Dr. Culbertson's estimate of loss of future earnings.
We conclude that the jury either did not accept Dr. Culbertson's proposed earning capacity of Mr. Hoyt in making its award or believed that Mr. Hoyt was able to perform some work, thereby reducing his actual loss of future earnings. Testimony of a vocational expert at trial established that there is some work, albeit limited, that Mr. Hoyt can perform in the labor market. The vocational expert testified that Mr. Hoyt could return to work in the tree trimming industry in a supervisory capacity, with approximate earnings of $24,000.00 per year, or to his previous capacity as a business owner.
Mr. Hoyt admitted that he had performed some jobs since his accident, working with his brother in the tree trimming business. Despite his inability to physically perform tree trimming work, Mr. Hoyt acknowledged *1355 that he is still capable of bidding and supervising jobs.
Considering the foregoing and the record as a whole, we cannot conclude that the jury abused its discretion in awarding Mr. Hoyt $382,200.00 for loss of future earnings.

DECREE
For the foregoing reasons, it is ordered, adjudged and decreed that the January 6, 1992 judgment of the trial court granting judgment notwithstanding the verdict on the issue of allocation of fault is reversed and judgment is hereby rendered, assessing the fault of the parties, as follows: Plaintiff, Mike Wayne Hoyt20%; Myron J. "Jim" Luck, d/b/a International Tree Company 40%; Margot, Inc.40%; Wood/Chuck Chipper Corp.0%; and Perkins Engines, Inc. 0%; and
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in accordance with Gauthier v. O'Brien, 618 So.2d 825 (La.1993), fault is reallocated to plaintiff, Mike Wayne Hoyt at 33.33% and to defendant, Margot, Inc. at 66.67%.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the jury's assessment of damages in favor of Mike Wayne Hoyt in the amount of $1,302,285.43 and the jury's award for loss of consortium in favor of Leona Hoyt in the amount of $100,000.00 are hereby affirmed. Accordingly,
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Mike Wayne Hoyt and against defendant, Margot, Inc., in the amount of $868,233.67, representing 66.67% of the $1,302,285.43 damage award in his favor; and
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Leona J. Hoyt and against defendant, Margot, Inc., in the amount of $66,670.00, representing 66.67% of the $100,000.00 loss of consortium award in Mrs. Hoyt's favor.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment on the intervention filed by intervenors, International Tree Company and Houston General Insurance Company, in accordance with Gauthier, 618 So.2d at 832, in the amount of $111,019.83, representing 66.67% of $166,521.43, the amount stipulated to have been paid to Mr. Hoyt for medical and weekly compensation benefits, to be paid in preference and priority to the rights of plaintiffs; and
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs' claims against Wood/Chuck Chipper Corp. and Perkins Engines, Inc. be dismissed with prejudice.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that costs of this appeal are assessed one-third each to Mike Wayne Hoyt and Leona Hoyt; Margot, Inc.; and International Tree Company.
JUDGMENT NOTWITHSTANDING THE VERDICT REVERSED; JURY VERDICT REVERSED IN PART AND AFFIRMED IN PART; AND JUDGMENT RENDERED.
PARRO, J., dissents.
GONZALES, J., dissents and assigns reasons.
GONZALES, Judge, dissenting.
Upon reading the verdict, the trial judge commented that the plaintiff's worst nightmare had come true. Defendant, Margot, based on the procedural history of this case, may regard the judicial action taken here as a nightmare. A suit was filed against Margot (and others) by a plaintiff who suffered a devastating injury (his hands were nearly cut off in a work place accident). After hearing all the issues in the case, the jury returns a verdict favorable to the defendant. Thereafter, the trial judge, obviously moved by compassion for a seriously injured plaintiff, and apparently believing that the jury may have been erroneous in failing to find at least some fault on the part of the Margot repair people, enters a judgment notwithstanding the verdict. The defendants then appeal that issue and basically win. This court sets aside the JNOV; however, in the interests of justice, this court orders a remand of the case. Hoyt v. Wood/Chuck Chipper Corp., 625 So.2d 504 (La.App. 1st Cir.). Margot, *1356 unhappy with the remand, seeks writs to the Supreme Court. The Supreme Court vacates the reversal of the JNOV and orders the appellate court to "decide the case." Writs granted, judgment vacated by 93-2869, 93-2932, 93-2939 (La. 1/28/94) 630 So.2d 783. Another panel of this Court now reviews the case. It agrees that the JNOV was in error. Margot wins again. This defendant is then met with the final judicial action, which basically fashions a totally new rule for review of JNOV's by a de novo standard. Utilizing de novo authority, the majority renders a judgment against Margot which is much more onerous than the original JNOV rendered by the trial judge. There is no case cited by anyone, either the majority or the lawyers in this case, which is precedent for allowing a de novo review upon reversal of a JNOV. The basic issue is: Whether the courts will be required to follow the well-established jurisprudential standards for review set out in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), Rosell v. ESCO, 549 So.2d 840 (La.1989) and Stobari v. State Through Department of Transportation and Development, 617 So.2d 880 (La.1993); or whether they are free to fashion new rules that achieve what they sincerely believe to be an equitable result.
There is no doubt that the order of the Supreme Court requires us to make a full determination of the case; however, there are no instructions in that order that require this determination to be by de novo review. For the following reasons I respectfully dissent.
The type of review employed by the appellate court is absolutely critical to the outcome of the case. If this case was reviewed for manifest error under Stobart and Rosell, there is no likelihood that the plaintiff could prevail. The fact finder in this case, in determining a serious credibility dispute between the parties, decided the fact issue of fault in favor of the defendants. Under the Stobart standard, there was a reasonable basis for this fact finding; that is, the jury believed Margot's employee. There simply were two different versions of the facts and the jury found the defendant's version more credible. This is the exact issue this court was faced with in the original opinion in this case. Hoyt v. Wood/Chuck Chipper Corp., 625 So.2d 504. Margot's witnesses claimed they replaced the keyed switch with a toggle switch at the request of Jim Luck, the owner of International. On the other hand, Luck claimed that he simply asked Margot to fix the chipper, and Margot decided on its own to replace the keyed switch with a toggle switch.

DE NOVO REVIEW
The majority opinion states: "When a finding of fact is interdicted because of some legal error implicit in the fact-finding process or when a mistake of law forecloses any finding of fact, the appellate court must review the record de novo and render a judgment," citing Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707, 708 (La.1980). (Emphasis added.) What the Supreme Court actually said on page 708 of the Ragas opinion is "[w]here a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render a judgment on the record." (Emphasis added.) The majority claim that Ragas requires a de novo review and the majority's later conclusion at the end of the next paragraph on page 4, wherein it says "we conclude that the proper action for this court to take is to decide the issues of fault and apportionment of fault de novo ..." is, in my opinion, not a correct interpretation of Ragas or of the Supreme Court order in this case. While it is correct that in Ragas the appellate court was unable to give any deference to the jury's fact finding process on the issues regarding the liability of certain parties in a malpractice suit, this was so because the factual history presented to the appellate court involved a directed verdict. There were, therefore, no jury fact findings which could be interdicted or to which deference could be given.
Under what I believe to be a correct analysis of Ragas, and other opinions authorizing de novo review where there has been an interdiction of the fact finding process, a two-step *1357 process is required. The first step is identification of the error which interdicts the jury fact finding. The second step is a de novo analysis by the appellate court.
There are several situations where legal error implicit in the fact finding interdicts that finding. One type of interdicting error is the giving of improper jury instructions. "[W]hen an appellate court has all the facts before it, a trial judge's erroneous instruction to the jury does not warrant a remand."[1]Gonzales v. Xerox, 320 So.2d 163, 165 (La. 1975); Picou v. Ferrara, 483 So.2d 915, 918 (La.1986); Smith v. Arkansas Louisiana Gas Company, 26,180 (La.App. 2d Cir. 10/22/94), 645 So.2d 785, 790; Snia v. United Medical Center, 93-2367 (La.App. 4th Cir. 5/26/94), 637 So.2d 1290, 1291, writ denied, 94-1653 (La. 10/7/94), 644 So.2d 637; Odom v. Colonel Sanders Kentucky Fried Chicken, 93-1084 (La.App. 1st Cir. 4/8/94), 636 So.2d 1027, 1028, writ denied, 94-1567 (La. 9/30/94), 642 So.2d 872.
A second type of fact finding interdiction is the erroneous exclusion or admission of evidence. "[A]ppellate courts render judgments on the merits when the trial court has made a consequential but erroneous ruling on the exclusion or admission of evidence." Gonzales v. Xerox, 230 So.2d at 165; Buckbee v. United Gas Pipe Line Company, Inc., 561 So.2d 76, 86-87 (La.1990); Hines v. Arkansas Louisiana Gas Company, 613 So.2d 646, 651 (La.App. 2d Cir.), writ denied, 617 So.2d 932 (La.1993); Pitard v. Stillwater Transfer and Storage Company, 589 So.2d 1127, 1129 (La.App. 4th Cir.1991), writs denied, 594 So.2d 1314 (La.1992); Schwamb v. Delta Air Lines, Inc., 516 So.2d 452, 460 (La.App. 1st Cir.1987), writ denied, 520 So.2d 750 (La. 1988).
Another type of fact finding interdiction is opponent attorney misconduct. Attorney misconduct was found in Beale v. Government Employees Insurance Co., 630 So.2d 906, 908 (La.App. 4th Cir.1993), wherein the court stated, "We agree that the jury's verdict was probably tainted by the [defense counsel's] comments. We will, therefore, set aside the jury's verdict and make an independent determination of the facts from the record without according any weight whatsoever to the factual findings of the tainted jury."
A fourth situation resulting in de novo review occurs where the jury's fact finding verdict has been precluded by the action of a trial court such as when a directed verdict is granted. This was the situation in Ragas, discussed above.
A fifth type of fact finding interdiction is an incorrect allocation of the burden of proof by the trial court. American Machinery Movers v. Continental Container Service, Inc., 436 So.2d 1289, 1291 (La.App. 4th Cir. 1983), citing Ragas.
In the case before us, there has been no claim of exclusion of evidence, or an erroneous jury charge, outrageous opponent attorney misconduct, directed verdict, or an incorrect allocation of the burden of proof. The jury was given proper instructions on both the factual issues of fault and damages. No significant evidence on either one of these fact issues was excluded by the trial court and there is no claim of opponent attorney misconduct which would interdict the jury's fact finding process, on either the question of fault or on the question of damages. The two judgments in this regard denying the motion for new trial says "[i]t is further ordered that the motion for new trial is hereby denied on the grounds that the law and the evidence was properly submitted at trial." No party has complained of this ruling that the law and the evidence were properly submitted.
The majority opinion makes a de novo review of the fault issue; however, on the quantum issue they use the normal standard of review which is abuse of discretion standard. The abuse of discretion review standard is one that gives the highest deference to the jury's fact finding. As we know under *1358 Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), this discretion is vast, and the jury's fact findings are almost unchangeable at an appellate level. Interestingly, this is the fact finding that the majority does not wish to change. Utilizing different standards of review appears to be inconsistent.
A fair reading of the trial judge's reasons for judgment when he granted the JNOV, indicates that he applied the directed verdict standard. That is, he believed that reasonable minds could not differ on the factual issues presented by the evidence. The first panel of this Court to consider this case decided that the judge had misapplied the standard and found that there was an insufficient basis for determining that reasonable minds could not differ, and that there were, in fact, two versions of the facts, either of which could be believed by the jury and thus there was no basis for a JNOV. Hoyt v. Wood/Chuck Chipper Corp., 625 So.2d 504. The majority of this present panel must have found that there is insufficient evidence to justify a JNOV (although it does not discuss the reasons for reversing the JNOV) and it can only reach that conclusion by determining that reasonable minds could differ on the factual issues presented. As stated in Judge (now Justice) Lemmon's concurrence to Ragas "It appears inconsistent for an appellate court to determine that the record presents a question for jury resolution which should not be decided by the trial judge (who heard the evidence) and then to proceed to resolve the question by weighing evidence and making credibility determinations based on the reading of a cold record." Ragas, 379 So.2d at 826.
The majority in effect says the trial judge should not have substituted its judgment for that of the fact finder. The majority then goes on, under a claim of de novo review authority to substitute its own judgment from a cold record on factual issues for that of the jury which heard and evaluated the witnesses.
I believe, on the other hand, (as I stated in my original opinion) that once it is determined that the record does not reflect evidence so overwhelming and so strong with all presumptions made against the party seeking the directed verdict, that reasonable minds could not differ on a factual issue then the JNOV must be set aside. Once the JNOV has been set aside, there remains in full force and effect the fact finding by the jury of no fault on the part of Margot. The plaintiffs have devolutively appealed the judgment of December 30, 1991, which carries out the jury verdict and that appeal is all that should now be before this court. Since there has not been even the slightest effort to demonstrate that this fact finding process was in any way impinged, corrupted, interdicted or undermined, then this fact finding process must be given full deference.
The majority reviews, but does not change, the fact finding on quantum. Apparently they believe there is some error in the fact finding process on the issue of quantum, which they do not identify. Since we cannot find any such error referenced in the majority opinion, we look to the plaintiffs' assignments of error to see what their complaint is with regard to the damages issue.
We find that the plaintiff's have assigned as error the failure of the judge to give them an opportunity to review the verdict form before making a closing argument to the jury as required by La.C.C.P. art. 1812. Another assignment of error is that the jury verdict form lacked directions which could have saved the jury some time, in that the form did not advise the jury that it was unnecessary to consider the quantum question if either fault or causation were found favorable to the defendants. This is a curious position for a plaintiff to take because the failure to give this time saving direction is generally advantageous to a plaintiff because it forces the jury to discuss and decide the issue of quantum regardless of their decisions on the other questions. These missing time saving directions are clearly not instructions on the law. There is no law that requires a particular style of special verdicts, even though La.C.C.P. art. 1812 recommends some. The order in which the questions are presented to the jury is not required by law, however La.C.C.P. art. 1812 does suggest a logical progression of questions. See Pacholl v. State Farm Mutual Automobile Insurance *1359 Co., 527 So.2d 1154, 1159 (La.App. 3rd Cir.), writ denied, 532 So.2d 158 (La.1988). Although it can save time to skip unnecessary special verdicts, there is no requirement that they be skipped. Williams v. Louisiana Power & Light Co., 590 So.2d 786 (La.App. 5th Cir.1991), writ denied 595 So.2d 656 (La. 1992). There can only be a de novo review if the error in the jury verdict form is so bad as to interdict the jury fact finding process. Otherwise, we must review under a manifest error standard. Doyle v. Picadilly Cafeterias, 576 So.2d 1143, 1153-54 (La.App. 3rd Cir.1991). The claimed inconsistency here was discussed and rejected in McVey v. Phillips Petroleum Company, 288 F.2d 53, 58-59 (5th Cir.1961). This Court reached the same result in Magee v. Coats, 598 So.2d 531, 535-36 (La.App. 1st Cir.1992).
If there was prejudice by failure to give these time saving directions, that prejudice was against the defendant. Plaintiffs have not only failed to show prejudice, but, even if suggestions in a verdict form as to what questions need not be answered are considered instructions on the law, then the Code of Civil Procedure requires that there be timely objection. The trial court must be given an opportunity to correct the error during the trial process. Louisiana Code of Civil Procedure article 1793(C) provides:
A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
If this foundation is not made at the trial court level it cannot later be raised for the first time on appeal as was done here. Berrera v. Hyundai Motor America Corp., 620 So.2d 890 (La.App. 4th Cir.1993); Keith v. Gallioto, 592 So.2d 510 (La.App. 5th Cir. 1991); Fabacher v. Laborde, McCauley & Wilson, Anesthesiologists, 563 So.2d 1305 (La.App. 3rd Cir.), writ denied, 569 So.2d 947 (La.1990); Jordan v. Intercontinental Bulktank Corp., 621 So.2d 1141 (La.App. 1st Cir.), writs denied 623 So.2d 1335 (La.1993); Lynch v. Hanover Insurance Co., 611 So.2d 121 (La.App. 5th Cir.1992), writ denied 613 So.2d 996 (La.1993). A review of the record in this case shows there was absolutely no objection raised by either side on this point at any time before the oral argument or after the judge charged the jury and submitted the case to the jury. Plaintiffs did object to other matters that were clearly instructions on law that were not given. These issues, since not properly reserved, cannot be considered by us under any review. There is no fact finding error and no legal error properly raised which would justify changing the jury's verdict. We must therefore simply affirm the jury's verdict.
NOTES
[1] The record of this case consists of seven volumes, including in excess of 2,000 pages of testimony, documentary evidence and exhibits generated by the parties.
[2] Our computations are as follows:

 Party Percentage of Fault
 Margot, Inc. 40%
 [International 40%]
 Mr. Hoyt 20%

Margot, Inc.'s reallocated fault = 40/60 or 66.67%
Mr. Hoyt's reallocated fault = 20/60 or 33.33% See Gauthier v. O'Brien, 618 So.2d 825, 830 n. 11 (La.1993).
[3] The record reflects that the judgment notwithstanding the verdict rendered by the trial court on January 6, 1992, and subsequently set aside by this court, was limited to the allocation of fault among the parties.
[4] We note that the income tax returns from which these figures were obtained were not prepared until after this lawsuit was filed.
[1] Most cases authorizing de novo review are stated in the reverse, as is Gonzales v. Xerox, 320 So.2d 163, i.e., remand is not necessary. In other words, where there has been interdiction of a fact finding and the appellate court has a full record before it, there is no need for a remand on that particular fact issue and the appellate court, as a matter of judicial economy is required to find the fact.